CLAUDIO, DEMANDANTE Y APELADO, v. ORTÍZ, DEMANDADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Ponce en
pleito sobre cobro de dinero.

No. 2429.—Resuelto en mayo 16, 1921.

INCONSTITUCIONALIDAD DE PARTE DE LA LEY DEFINIENDO PRIVILEGIOS DE LOS LE-
GISLADORES—SUSPENSIÓN DE VISTAS—PODER JUDICIAL.—Un abogado que es al
mismo tiempo legislador no puede tener el privilegio, como cuestión de de-
recho, de obtener la suspensión de una vista previamente señalada por la
Corte Suprema, alegando estar la Legislatura en sesión y amparándose en la
inmunidad que le concede la Ley No. 34 de marzo 11, 1915. Aquella parte
de dicha ley que establece este privilegio como exclusivo es anticonstitucional
y nula por ser contraria al poder judicial.

PRÓRROGA DE TÉRMINO VENCIDO—EXPOSICIÓN DEL CASO.—Es nula una orden de
la corte de distrito prorrogando el término para presentar la exposición del
caso cuando ya había expirado dicho término.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. R. Arjona Siaca.*

Abogado del apelado: *Sr. C. del Toro Fernández.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

El apelado solicitó la desestimación de esta apelación.

El abogado del apelante, en contestación a la moción de
desestimación, radicó una solicitud pidiendo la suspensión de
la vista de dicha moción, y en esa solicitud alegaba como
única razón que era un miembro de la Legislatura de Puerto
Rico; que la Legislatura estaba actualmente en cesión, e in-
vocaba su privilegio o inmunidad como miembro de la Le-
gislatura de acuerdo con la ley de marzo 11 de 1915.

La parte pertinente de la ley en cuestión es como sigue:

"Sección 2.—No se arrestará en ningún caso a los miembros de
la Legislatura durante un período legislativo, ni durante los quince
días que precedan a dicho período legislativo y subsiguientes al mismo,
excepto en casos de traición, de delitos graves (*felonies*), y de altera-
ción de la paz pública; ni a ningún miembro durante el mismo lapso
de tiempo se le citará para que comparezca como testigo ante ningún
tribunal, excepto con el consentimiento de la Cámara de la Asamblea

Legislativa de que sea miembro. Si en algún asunto, acción o procedimiento estuviere interesado un miembro de la Asamblea Legislativa de Puerto Rico, bien como parte, ya como testigo necesario o como uno de no más de dos abogados de una de las partes, tales asuntos, acciones o procedimientos no podrán ser señalados para vista, discusión o juicio, mientras dure aquel período o sesión legislativa, ni dentro de los veinte días anteriores o posteriores a dicho período legislativo, siendo nulo todo señalamiento hecho en contravención de esta disposición, a menos que haya mediado el consentimiento expreso del miembro de la asamblea. En todo caso, será deber del tribunal ante el cual estuviere pendiente el asunto o procedimiento, suspender inmediatamente la vista o discusión señalada, a petición de la persona con derecho a este privilegio.''

Como la cuestión de la constitucionalidad de la ley no había sido discutida, la corte señaló día para oir a las partes sobre este punto y en el fondo. El apelado radicó un alegato. El apelante, o más bien su abogado, no radicó alegato alguno. El apelado en su alegato sostiene que esta ley es contraria a la enmienda catorce de la Constitución de los Estados Unidos o a aquella parte de la misma que sea de aplicación, la cual es como sigue:

''Todos los que nazcan o se naturalicen en los Estados Unidos o que estén sujetos a su jurisdicción, son ciudadanos de los Estados Unidos y del Estado donde residen. Ningún Estado podrá hacer ni poner en vigor ley alguna que desvirtúe los privilegios o inmunidades de los ciudadanos de los Estados Unidos; tampoco podrán los Estados privar a nadie de la vida, libertad o propiedad sin haber mediado los procedimientos legales; ni podrán negar a nadie dentro de su jurisdicción, la igualdad de protección ante la ley.''

Para desarrollar su teoría el apelado dice entre otras cosas que esta ley debiera ser declarada anticonstitucional por ser contraria a la razón, arbitraria e injusta, y no uniforme en su aplicación. El apelado dice además que algunos de los abogados que pertenecen a la Legislatura solicitan señalamientos de sus asuntos, que comparecen en corte mientras la Legislatura está en plena sesión cuando su interés pecuniario

o la conveniencia de su bufete les impulsa a hacerlo así, pero que algunos de esos mismos abogados no vacilan en hacer uso de su privilegio como miembros de la Legislatura para cansar a la parte contraria y someter al dicho adversario a indebidas demoras y molestias.

Más especialmente, el apelado supone casos donde según él las suspensiones privarían de su propiedad, sin el debido procedimiento de ley, a las personas sometidas a esta invocación del privilegio legislativo. Nos pide que supongamos el caso de un niño indefinidamente privado de su sostenimiento por más de cuatro meses. También supone el caso de un padre imposibilitado de obtener la custodia de su hijo menor. Asimismo llama la atención a los procedimientos de desahucio. A estos ejemplos pudieran agregarse otros asuntos como *injunctions* y sindicaturas y otros procedimientos especiales, como las solicitudes de administración de los bienes de difuntos.

En manera alguna estamos convencidos que el apelado pueda no tener razón al decir que esta ley en su aplicación podría privar a una persona de su propiedad sin el debido procedimiento de ley. Derechos de propiedad pudieran ser directamente afectados y nada importa que en el caso ante nosotros tal consecuencia no pueda surgir. Al discutir la constitucionalidad de esta ley debe recordarse que "la cuestión ha de ser determinada no por lo que se haya hecho en algún caso concreto *sino por lo que pueda hacerse al amparo y en virtud de esta facultad.*" *Colón* v. *Lisk,* 153 N. Y. 194, y casos allí citados.

Tratando este invocado privilegio o inmunidad como un derecho a una suspensión, generalmente sería la negativa de tal derecho de suspensión la que más adecuada y directamente cabría dentro de la enmienda catorce de la Constitución de los Estados Unidos. Sin embargo, existiendo una suspensión forzosa por razón de un privilegio legislativo, entonces en casos de desahucio, *injunctions,* sindicaturas u otros casos

que pudieran imaginarse, este supuesto derecho de su adversario a una suspensión podría tender y en muchos casos probablemente tendería a privar a uno de su propiedad, si no absolutamente al menos por algún tiempo. Ahora bien, dado lo somero de este examen de la cuestión y en ausencia de una amplia discusión por las partes, preferimos basar nuestra opinión en un fundamento algo diferente.

El privilegio alegado no puede sostenerse. De esta conclusión estamos seguros, aunque quizás no lo estemos tanto de parte del razonamiento por el cual se llega a esa conclusión.

La distribución de los poderes y funciones gubernamentales se discute en 12 Corpus Juris 802, en la siguiente forma:

‘‘ (Sec. 234.)—El Gobierno Constitucional en los Estados Unidos se distingue por el cuidado que se ha ejercitado al asignar las funciones legislativas, ejecutivas y judiciales a distintos departamentos, y al prohibir cualquier intrusión de un departamento en otro en el ejercicio de la autoridad así delegada. Esta teoría de la tripartita división y separación de los poderes del Gobierno fué apuntada por Aristóteles y discutida por Locke. Montesquieu la declaró esencial a la libertad civil, y fué por medio de su célebre obra que la teoría vino a ser familiar para y aceptada por los hombres que redactaron constituciones de los primeros Estados americanos y la constitución federal de 1787. La separación de los poderes estaba considerada por Montesquieu, Blackstone y por los autores Americanos de constituciones en el siglo dieciocho, como una de las principales y más notables características de la Constitución Inglesa. De hecho no existía tal separación de las funciones legislativas y ejecutivas bajo la Constitución Inglesa, y fué en las constituciones escritas de los nuevos estados Americanos donde primeramente fué aplicada de una manera práctica. En Virginia, donde bajo el sistema colonial los jueces tenían asiento en la Legislatura, la declaración de derechos adoptada en 1776 que marcó la transición de provincia a Estado (*commonwealth*), disponía ‘que los poderes legislativo y ejecutivo del Estado deberán ser separados y distintos del judicial.’ La cláusula distributiva así originada fué incluída en otras constituciones primitivas, y de tiempo en tiempo fué adoptada por los nuevos estados. De modo que, excepto en algunos casos, todas las constituciones de los Estados

Americanos contienen una disposición para la división de los poderes gubernamentales en legislativos, ejecutivo y judicial. Muchas de ellas disponen también que ningún departamento podrá ejercitar poderes pertenecientes a otro, mientras otras disponen que una persona perteneciente a uno de los tres departamentos no podrá ejercitar poder alguno correspondiente a cualquiera de los otros departamentos excepto en los casos expresamente previstos y permitidos por la constitución. Bajo tales disposiciones, cada departamento debe ejercer todos sus poderes siempre que la necesidad pública lo exija, y abstenerse de ejercitar ningún poder que no le corresponda.

"Sec. 235.—Pero aunque esta es la teoría del Gobierno Constitucional Americano, ha dejado de ser un canon aceptado en la ciencia política. Nunca ha sido enteramente cierta en la práctica. Las cortes reconocen que la separación de los poderes dista mucho de ser completa, y que la línea divisoria entre ellos es a menudo indefinida. Cada uno de los tres departamentos ejercita normalmente poderes que no están estrictamente dentro de su competencia. Así el ejecutivo, por medio del veto, participa del poder legislativo, y al resolver reclamaciones, del poder judicial. La Legislatura puede ser autorizada para ejercitar el poder de nombramientos, y al resolver reclamaciones, y, en algunos Estados, al conceder divorcios, actúa judicialmente. Las cortes, también legislan no sólo mediante decisiones que modifican la ley existente sino haciendo reglas, que a menudo tienen casi tanta fuerza, como un estatuto, y no excepcionalmente son investidas con el poder de hacer nombramientos."

En la edición de febrero, 1921 de *Harvard Law Review,* hay un artículo en la página 424 titulado "¿Hasta dónde Pueden las Legislaturas Regular los Procedimientos antes las Cortes?" Una cita de este artículo es a propósito para el fin que perseguimos. Después de indicar que los conflictos eran raros debido a la deferencia de las cortes, el escritor dice lo siguiente:

"Resulta evidente de estos casos que, dentro de nuestro sistema de doble regulación del procedimiento, la reglamentación judicial no es co-extensiva con la legislativa. Cualquier otro resultado sería contrario al molde de nuestras constituciones y a la separación de poderes. Decir, como indica el Juez Field, que la reglamentación legislativa del procedimiento judicial depende para su efectividad de la

acquiescencia de las cortes sería desmentir los hechos históricos.
Igualmente vulnerable es el dicho de que las cortes pueden regular
su procedimiento sólo con permiso de las Legislaturas. Las órbitas
de la reglamentación legislativa y judicial de los procedimientos son
distintas y deben ser determinadas en primer lugar por criterios
históricos. Claramente las cortes pueden ignorar cualquier interven-
ción legislativa en lo que ellas habitualmente han regulado desde los
tiempos primitivos. En esa categoría están incluídos tales asuntos
como la admisión al ejercicio de la abogacía, la suspensión en dicho
ejercicio, y los detalles de procedimientos, siendo un ejemplo de este
último el caso principal. (*Houston* v. *Williams,* 13 Cal. 24; 73 Am.
Dec. 585.) Lógicamente, pues, la Legislatura debiera tener derecho
a regular aquellas cuestiones de procedimiento que ella habitualmente
regula. Pero la doctrina de separación de los poderes impone res-
tricciones sobre este derecho legislativo. El departamento judicial
es un departamento coordinado independiente. Consiguientemente,
la Legislatura se extralimitaría de su órbita si hubiese de hacer alguna
disposición que disminuyese el poder general de las cortes para admi-
nistrar justicia o que sustancialmente obstaculizare las funciones de
la corte. La reglamentación del poder de las cortes sobre los desaca-
tos sería un ejemplo de primera clase. La limitación por la Legis-
latura del tiempo concedido a los abogados para informar podría bien
considerarse como un ejemplo de la segunda.''

Las dificultades suben de punto por el hecho de que las
Leyes Orgánicas de Puerto Rico siempre han dado a la Legis-
latura la facultad de regular las cuestiones de jurisdicción y
procedimiento. Las legislaturas pueden fijar los términos de
sesiones de las cortes, pero no pueden completamente sus-
pender sus sesiones. Por ejemplo, si la Legislatura hubiere
de exigir que todas las cortes suspendieran sus sesiones y no
celebraran ninguna durante 130 días o más (el efecto del
privilegio aquí invocado), podría dudarse si esto constituye
un ejercicio razonable del poder de la Legislatura sobre los
procedimientos de las cortes, especialmente si fuera la in-
tención cerrar las cortes e impedir las solicitudes de remedios
extraordinarios. Aún en vacaciones, las cortes pueden con-
ceder ciertos remedios extraordinarios.

Bastantes cortes han determinado la cuestión del poder

legislativo sobre los procedimientos judiciales y otros asuntos análogos mediante la prueba de razonabilidad. La Legislatura podrá quizás, hasta cierto punto, regular la admisión al ejercicio de la abogacía, podrá limitar la facultad de castigar por desacato y hacer otras cosas semejantes, y hemos respetado sus leyes en este sentido, pero las cortes han de tener el gobierno de los casos pendientes ante ellas durante los términos de sesiones. Esta es una cuestión de poder judicial que ha sido conferida, por las Leyes Orgánicas pasadas y presentes, a la Corte Suprema y demás cortes inferiores.

En New York hubo un caso con algunos elementos de analogía, a saber, *Riglander* v. *Star Company*, 98 App. Div. 101. La ley en cuestión exigía que cierto caso fuera señalado para y visto en determinado día, teniendo ya esa clase de caso cierta preferencia de acuerdo con las leyes. La corte dijo:

"Uno de los poderes que siempre ha sido reconocido como inherente en las cortes, las cuales están protegidas en su existencia, sus poderes y su jurisdicción por disposiciones constitucionales, ha sido el derecho a gobernar el orden de sus asuntos y a ponerlo en práctica de tal manera que los derechos de todos los litigantes ante ellas estén garantizados. Este poder ha sido reconocido como judicial por su naturaleza y como un aditamento necesario a toda corte organizada para hacer cumplir obligaciones y reparar daños."

Esa decisión en parte giraba sobre el hecho de que sería injusto obligar a una parte siempre a ir a juicio en determinado día, pero es igualmente injusto decir que el caso de un hombre puede ser siempre pospuesto en cierta época al arbitrio de otro.

Como se dice en 13 Corpus Juris 126, "las suspensiones de casos no son favorecidas por las cortes, y de concederse, los fundamentos alegados, deben ser tales que la corte pueda claramente ver que una suspensión del caso habrá de resultar en bien de la justicia."

"Bajo nuestro sistema de gobierno las cortes no pueden

legalmente intervenir en la sustancia del poder y discreción legislativas conferidas a la Legislatura por la Constitución. Ni puede la Legislatura legalmente intervenir en la sustancia del poder y discreción judiciales conferidos a las cortes por la Constitución. La Legislatura puede legalmente prescribir reglas de procedimiento que han de ser observadas por las cortes; pero la Legislatura no tiene poder alguno bajo la Constitución para regular la discreción judicial con que están investidas las cortes.''

*Ruff* v. *Georgia S. & F. Ry. Co.,* 64 So. 785, donde la concesión o denegación de una moción de nuevo juicio, distinguida de una mera cuestión de procedimiento, se resolvió ser discrecional en las cortes.

Véase también *Chicago B. & Q. Ry. Co.* v. *Gildersleeve,* 118 S. W. 86, al efecto de que las cortes no puedan ser despojadas de su poder para castigar por desacato.

*Kilbourn* v. *Thompson,* 103 U. S. 168, fué un caso donde la Corte Suprema de los Estados Unidos dijo que el Congreso se había excedido de su poder para castigar por desacato, mostrando que hay ciertos campos que la Legislatura no tiene derecho a invadir.

El caso de *Bridgeport Public Library, Etc.,* v. *Burroughs Home et al.,* 82 Atl. 582, con los casos citados allí, es también interesante como indicativo de que la Legislatura no puede generalmente determinar derechos controvertidos aún cuando tal poder ha sido alguna vez reclamado por la Legislatura. La teoría de la división de los poderes del gobierno lo impedía.

La prueba histórica sólo sirve de guía puesto que el procedimiento de las cortes ha sido regulado y sus poderes limitados desde la organización de prácticamente todas las soberanías en los Estados Unidos, y asimismo las cortes han reclamado como poderes exclusivos ciertos poderes de que en un tiempo las legislaturas participaban concurrentemente. Esta concurrencia aún subsiste en muchos campos. *Grane*

v. *Meginnis,* 19 A. D. 237, fué un caso en que la Legislatura concedió un divorcio.

Hemos dicho que el debido procedimiento de ley no es la base de esta opinión, pero debe siempre representar un papel aquí. McGehes, "Debido Procedimiento de Ley," página 68. Si una ley determinada constituye o no una invasión del poder judicial puede depender de si su acatamiento produciría el efecto de que las cortes actuaran arbitraria o injustamente o dieran a un ciudadano preferencia sobre otro al enjuiciar los casos sin haber nada en la naturaleza de los pleitos mismos que justificara tal preferencia.

Los abogados que se sientan en la Legislatura son también funcionarios de esta corte. Ellos tienen un doble deber. En la mayoría de los casos un abogado que también fuera miembro de la Legislatura podría discrecionalmente obtener una suspensión legítimamente pedida, y no recordamos ningún caso en que se le haya negado.

Una suspensión como la pedida nunca puede ser una cuestión de derecho, pues el abogado debe tanta fidelidad a la corte como a la Legislatura. De modo que, la cuestión de si un caso debe o no ser suspendido no puede determinarse sobre el privilegio de los legisladores, pues esto produciría desigualdades e invadiría un campo que es puramente judicial. Aquella parte de la Ley No. 34 de marzo 11 de 1915 que establece este privilegio como exclusivo es anticonstitucional y nula por ser contraria al poder judicial.

En vista de la anterior conclusión resolveremos la moción de desestimación de apelación.

Se dictó sentencia en noviembre 23, 1920, e interpuso apelación en diciembre 23, 1920, habiéndose presentado la solicitud de prórroga para radicar una exposición del caso en enero 11, 1920, que fué concedida. La corte de distrito no tenía facultad para prorrogar el término en esa fecha, siendo nula la orden prorrogando el término. Código de Enjuiciamiento Civil, artículo 299 como fué enmendado. *Belaval* v.

*Córdova,* 21 D. P. R. 538; *Guardian Assurance Company* v. *López Acosta,* 24 D. P. R. 641; *Ex parte Delis et al.* v. *Franco,* 21 D. P. R. 526, y *Críado* v. *Rivera,* 25 D. P. R. 234.

Con respecto a la moción de desestimación por tanto, es evidente que debe ser declarada con lugar.

*Sin lugar la moción pidiendo suspensión de la vista y desestimado el recurso.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.