El Pueblo de Puerto Rico, demandante y apelado, *v.* Nicolás Vélez, acusado y apelante.

Núm. 10315.—*Sometido:* Febrero 7, 1944. *Resuelto:* Abril 19, 1944.

---

[2] Véase también *Restatement, Torts,* Vol. 4, §876, subdivisión (*a*), págs. 435-6.

[3] Véase *Adams* v. *Quintero,* 44 D.P.R. 9.

*Manuel Cruz Horta,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Nicolás Vélez fué acusado ante la Corte de Distrito de Humacao el día 6 de junio de 1939 de una infracción al artículo 320 del Código Penal porque "ilegal y voluntariamente marcó, selló y desfiguró cortándole parte del rabo y alterándole la conformación de las astas, cuernos o chifles, una novilla (animal de la especie vacuno), perteneciente a Benito Abad Robles, con la intención maliciosa y criminal dicho acusado de allí y entonces robar, hurtar y apropiarse dicho animal, que no era de su pertenencia, e impedir que su legítimo dueño, el expresado Benito Abad Robles, identificara su novilla."

El 20 de junio del mismo año se leyó la acusación y el acusado, representado por abogado, hizo alegación de inocente y solicitó juicio por jurado. Esto no obstante, no fué hasta el día 27 de octubre de 1942—tres años y cuatro meses después—que se celebró el juicio ante jurado siendo convicto el acusado y sentenciado a cumplir un año de presidio.

El primer señalamiento alegado por el apelante en este recurso es que la corte inferior erró al denegar su moción solicitando el archivo y sobreseimiento del caso de acuerdo con el artículo 448 del Código de Enjuiciamiento Criminal.

Los autos demuestran que dicha moción fué formulada por el abogado defensor verbalmente al ser llamado el caso para juicio. El fiscal se opuso y, haciendo constar que "producimos (*sic*) en evidencia los autos y minutas de la corte," demostró que el caso fué señalado para juicio por primera vez para el *9 de julio de 1941* y no habiendo comparecido el acusado, a pesar de haber sido citado, se ordenó su arresto y fué citado por desacato; que el mismo día compareció el abogado defensor y alegando que el acusado no había tenido tiempo de comparecer por haber sido citado la noche anterior, obtuvo se dejara sin efecto la orden de arresto y que se suspendiera el juicio para el *18 de agosto de 1941*. En dicha fecha el acusado volvió a solicitar la suspensión por no estar preparado para juicio, el fiscal se opuso y la corte denegó la moción, pero luego, al manifestar el acusado que estaba dispuesto a pagar las costas ocasionadas a El Pueblo se allanó y la corte volvió a suspender la vista del caso. Se señaló de nuevo para el 26 de marzo de 1942 y "porque a las once de la mañana *no habían llegado todavía los jurados*" (Bastardillas nuestras) y porque "se estaba viendo otro caso por mutilación", según manifestó el fiscal, el acusado radicó otra moción de suspensión, renunciando expresamente al derecho a un juicio rápido, a la cual se allanó el fiscal, y una vez más la corte suspendió la vista señalándose y viéndose por último el 27 de octubre de 1942.

El abogado defensor, mientras el fiscal decía que "producía" en evidencia las minutas de la corte demostrativas de los anteriores hechos, no hizo oposición alguna. Tampoco anotó excepción a la resolución de la corte denegando su moción de archivo y sobreseimiento. Ahora, en apelación, alega que no debemos tomar en consideración lo dicho por el fiscal porque "no aparece del récord nada que justifique (justa causa) la tardanza en la celebración de este juicio", pues el fiscal se refirió verbalmente a las minutas pero las mismas no aparecen como ofrecidas en evidencia ni en ninguna parte de la transcripción del récord como presentadas como prueba.

No tenemos duda de que cuando el fiscal dijo "producimos en evidencia", al referirse a los autos y a las minutas de la corte, estaba ofreciéndolas como prueba y que, no habiendo hecho oposición alguna el acusado la corte las admitió, pues al denegar la moción del acusado se refirió a ellas expresamente. El propio apelante, que es quien levanta la cuestión, para poder argumentarla, se basa precisamente en las constancias a que hizo referencia el fiscal. Si no era cierto que de los autos de la corte inferior aparecían las distintas mociones de suspensión, presentadas todas ellas por el acusado, él pudo controvertir las manifestaciones del fiscal y afirmativamente demostrar que no las había presentado y tampoco renunciado a un juicio rápido. No puede ahora quejarse si el récord en apelación no está completo y no ha puesto a esta Corte en las mismas condiciones en que lo estuvo la corte inferior al resolver su moción.

Los hechos de este caso demuestran la negligencia inexcusable con que se están tramitando algunos procesos criminales en las cortes de distrito. En un sencillo proceso iniciado hace cuatro años y diez meses—junio de 1939—se celebra el juicio tres años y cuatro meses después—octubre de 1942—y los autos en apelación son radicados en esta Corte Suprema un año y un mes más tarde—noviembre de 1943. No hay justificación alguna para que situaciones como ésta

prevalezcan. No hace un mes tuvimos ocasión de criticar lo ocurrido en un caso de asesinato procedente de la Corte de Distrito de Guayama. Véase *Pueblo* v. *González,* pág. 263 ante. Hoy nos vemos precisados a hacerlo con uno de la Corte de Distrito de Humacao. Tanto los fiscales como los acusados tienen derecho a solicitar y obtener suspensiones, por tiempo razonable, por causas que en verdad sean meritorias. Empero, las cortes están en el deber de denegar suspensiones, sea el fiscal o sea el acusado quien las solicite, cuando los motivos alegados son frívolos y el propósito perseguido es meramente dilatar los procedimientos. Los hechos del caso de autos son un ejemplo de dilación injustificada que pudo ser evitada. Primero se cita al acusado la noche antes del primer señalamiento para juicio, cuando debió hacerse por lo menos cinco días antes; luego se suspende un segundo señalamiento por el alegado motivo—claramente dilatorio y frívolo—de no estar preparado el acusado para entrar a juicio, y por último, varios meses después, se vuelve a suspender también a petición del acusado, quien renunció a un juicio rápido, porque se estaba viendo otro caso y no habían llegado todos los jurados. Son procedimientos de esta naturaleza los que ocasionan una indebida acumulación de casos pendientes en las cortes de distrito, gastos innecesarios al fisco y entorpecen una rápida administración de la justicia.

Habiendo sido el apelante quien obtuvo las distintas suspensiones decretadas, no erró la corte al denegar su moción de archivo y sobreseimiento.

■■ No podemos entrar a considerar el segundo señalamiento por el que se alega que la corte inferior erró al denegar la moción de nuevo juicio, pues el segundo escrito de apelación, base del presente recurso, y en el cual se apeló tanto de la sentencia como de la resolución denegando un nuevo juicio, fué radicado el 15 de mayo de 1943, o sea cinco meses y veintisiete días después de haberse declarado sin

lugar dicha moción el 18 de noviembre de 1942. De acuerdo con el artículo 349 del Código de Enjuiciamiento Criminal el término para apelar de una sentencia es el de seis meses pero contra una providencia, como lo es la denegatoria de una moción de nuevo juicio, debe hacerse dentro de los sesenta días de dictada. Es cierto que el acusado radicó su primer escrito de apelación en tiempo pero a su solicitud esta corte desestimó el recurso y fué entonces que, ya vencidos con exceso los sesenta días radicó su segundo escrito de apelación.

Alega por último el apelante que el jurado erró al apreciar la prueba. Hemos examinado la transcripción de la evidencia y somos de opinión que la prueba de cargo, al merecerle crédito al jurado, es suficiente para sostener el veredicto de culpabilidad.

*Debe confirmarse la sentencia apelada.*