CARMEN LUZ GÓMEZ, menor de edad, representada y asistida por su madre con patria potestad AMELIA GÓMEZ RIVERA, demandante y apelada, *v.* JOSÉ DÍAZ LÓPEZ, demandado y apelante.

Núm. 10426.—*Sometido:* Mayo 9, 1951. *Resuelto:* Junio 29, 1951.

*Estrella García Capella,* abogada del apelante; *Manuel Torres Reyes,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El demandado apela de una sentencia que le condenó a pasar a su hija Carmen Luz Gómez, habida en relaciones

carnales con Amelia Gómez Rivera, la suma de $5 sema-
nales por concepto de alimentos y la de $20 por concepto de
honorarios de abogado.

Siete son los errores que señala en su alegato. Por el
primero, el cuarto y el séptimo ataca la apreciación.de la
prueba y las conclusiones de hecho del juez sentenciador;
por el quinto y el sexto le imputa a éste pasión, prejuicio y
parcialidad; por el segundo le imputa error al negarle opor-
tunidad de traer prueba testifical, y por el tercero, al ne-
garse a ordenar la citación de un juez municipal para im-
pugnar la credibilidad de la madre de la demandante.

No creemos necesario entrar en un análisis deta-
llado de la prueba que tuvo ante sí el juez sentenciador para
resolver este caso. Hemos examinado detenidamente dicha
prueba según aparece de los autos ante nos y no estamos
convencidos de que el tribunal inferior cometiera error ma-
nifiesto en su apreciación. Por tanto, desestimamos los
señalamientos de error correspondientes.

Al considerar los señalamientos quinto y sexto, he-
mos seguido detenidamente la forma en que se desarrolló
el juicio ante el tribunal inferior, según el récord, a fin de
poder sustanciar la imputación hecha al juez sentenciador
de haber actuado movido por pasión, prejuicio y parciali-
dad. No está, a nuestro juicio, justificada. El proceso
judicial no es cosa estática e inerte. Es fuerza dinámica
que hace penetrar a un ser humano—el juez—en los pro-
blemas complejos de la vida para convertirlos en realidades
jurídicas. El proceso judicial no puede desvincularse de la
naturaleza humana de quien lo dirige. Y como no hay
normas inexorables e inflexibles para medir la condición
humana, es posible que el juez que encara un problema social
como el de la alimentación de una niña de pocos meses, para
quien su madre reclama—de aquél a quien considera res-
ponsable de su paternidad—lo necesario para que su hija
pueda subsistir como criatura de Dios, no pueda sustraerse
a las emociones que en el alma de los hombres producen estas

tragedias de la vida, y haga un comentario que sea única-
mente reflejo de ese estado de su alma. Por eso no creemos
que sea signo de pasión, prejuicio o parcialidad, ante la soli-
citud tardía—al final del juicio—de que se cite al juez muni-
cipal que absolvió al supuesto padre en una causa criminal
por abandono de esa misma menor—con el fin de impugnar
la credibilidad de la madre—el que el magistrado ante quien
se celebró el juicio, y quien ya había oído desfilar la prueba,
luego de denegar dicha solicitud, hiciera la siguiente obser-
vación contestando otra de la abogada que representaba al
demandado: "Mire, compañera, nadie mejor que una mujer
sabe quién es el padre de su hijo."

Así se desarrolló el incidente sobre este extremo:

"Demandado: Señor Juez, nosotros no tenemos ninguna otra
prueba aquí. Éste es un caso importante para el acusado. Es
un caso en que un hombre ha venido negando la paternidad de
la niña. Éste es un caso especial. En la corte municipal la
madre de la niña declaró una cosa y aquí ha declarado otra
cosa, probándose el caso de una manera distinta en la corte
municipal.

"La Corte: Lo que pasó en la corte municipal no me lleva
a mí a ninguna conclusión.

"Demandado: Pero nosotros tenemos derecho a demostrar
que esta mujer está mintiendo; y entonces vuestro honor ten-
dría que hacer otras conclusiones; que se nos permita presen-
tar la declaración del juez municipal.

"La Corte: Yo todavía no he llegado a ninguna conclusión
porque no sabe la corte si su señoría ha terminado su caso.
¿Lo tiene aquí al Juez Municipal?

"Demandado: No, Señor Juez, no lo tenemos. Pero lo po-
demos traer en otro día. Yo dije que no tenía ninguna otra
prueba aquí.

"La Corte: Sin lugar. Su señoría sabía que el caso estaba
señalado para hoy y sabía que tenía que estar toda su prueba
aquí. Su señoría trajo a la secretaria y pudo traer al Juez.

"Demandado: Yo no podía adivinar que ella (la deman-
dante) iba a declarar en esa forma.

"La Corte: Sin lugar, sin lugar; su señoría trajo a la
secretaria de la corte municipal y pudo haber traído al Juez.

La Corte no va a discutir con la abogada. La Corte dice 'sin lugar'. Otra cuestión.

"Demandado: La necesidad de presentar al Juez de la Corte Municipal como testigo surge de la prueba de la demandante; tenga en cuenta vuestro honor que en este caso hay envuelto un problema social. La ley quiere evitar el problema social de que un hombre tenga un hijo y no lo mantenga, pero ese problema no se puede evitar o remediar creando otro problema como es el achacarle a un hombre un hijo que no es suyo y poner sobre sus hombros por muchos años la pesada carga de mantener un hijo ajeno.

"La Corte: Mire, compañera, nadie mejor que una mujer sabe quién es el padre de su hijo.

"Demandado: Por lo mismo que vuestro honor considera una falta tan grave el que un hombre no mantenga a su hijo y es tan severo con los hombres que así proceden, el tribunal debe tener mucho cuidado en estos casos y dar al hombre todas las oportunidades de defenderse para que el Juez lleve a su conciencia la satisfacción de que está plenamente convencido de que ese hijo es de ese hombre. Yo he oído a vuestro honor al sentenciar a padres que no mantienen a sus hijos decirles que los manda para la cárcel por tiempo indefinido e ilimitado hasta que pasen al hijo los alimentos; he oído a vuestro honor decirles que ellos tienen la llave de la cárcel; por lo mismo que este asunto puede costarle al demandado la cárcel para el resto de su vida, no debe verse con prisa; por lo mismo que se ha esperado tantos días, nada cuesta esperar unos días más.

"La Corte: Sin lugar. Otra cuestión.

"Demandado: Si al acusado se le amarra así y se le ata y no se le permite defenderse . . .

"La Corte: No, compañera, su señoría como mujer no tiene derecho ninguno a dirigirse impropiamente al tribunal. Y ya lo ha hecho dos veces; y yo me he hecho el que no la ha oído. Ahorita amenazó a la corte con que iba a apelar.

"Demandado: Eso no es una amenaza, sino una provisión. Excepción."

La significación de las palabras del juez no puede establecerse independientemente del momento y las circunstancias que le llevaron a pronunciarlas. Son realidades que no podemos pasar por alto, las siguientes: que la prueba de la

demandante es suficiente para sostener la sentencia; que la alegada inconsistencia en la declaración de la testigo no versaba sobre hecho alguno de importancia relacionado con la paternidad de la niña, ni con sus relaciones sexuales con el demandado, y que dichas palabras no denotan un estado prejuiciado de mente, y sí más bien la explosión de sentimiento humano de un espíritu justiciero ante la gran tragedia social que día tras día se asoma a las puertas de los tribunales tomando la forma de una árida contienda judicial.

▆▆▆ Los errores segundo y tercero tampoco fueron cometidos. El juicio fué señalado para el 28 de octubre de 1949. La primera comparecencia se había celebrado el 11 de dicho mes, habiendo comparecido las partes representadas por sus abogados. El demandado no tenía en corte ese día—ni los había citado—dos testigos que habrían de declarar en el sentido de que la madre de la menor demandante había tenido relaciones sexuales con otros hombres, por lo que solicitó la suspensión de la vista, dando como razón para ello la de que "nosotros teníamos fe en nuestra cuestión de derecho y no vinimos preparados para presentar prueba. Nosotros tenemos dos testigos que los llevamos a la corte municipal y no los citamos porque pensábamos dejar sometido el caso por la cuestión de derecho que hemos planteado." (1)

En verdad la suspensión o no de una vista descansa en la sana discreción de los tribunales. En el presente caso, habiéndose iniciado la acción el 23 de septiembre de 1949, celebrado la primera comparecencia el 11 de octubre siguiente y señalado la vista para el 28 del mismo mes, sin que se hubiera justificado en forma alguna la necesidad de

---

(1) Las cuestiones de derecho suscitadas en la contestación y explicadas oralmente el día de la vista son (1) que la demanda no aducía hechos constitutivos de causa de acción porque en la misma no se alegaba que la demandante fuera uno de los hijos que tenía derecho a ser alimentado y por no alegarse que el demandado hubiera reconocido a la supuesta hija y (2) la defensa de cosa juzgada por haber sido el demandado absuelto en una causa criminal por abandono de menores, con relación a la misma menor reclamante.

la suspensión excepto la de que la abogada del demandado no había venido preparada para presentar prueba por tener fe en las cuestiones de derecho, véase nota 1, no creemos que se abusara de dicha discreción.

■ Por último, no abusó de su discreción el tribunal inferior al no acceder a la solicitud tardía de que se citara al Juez Municipal de Toa Alta para impugnar la veracidad de la madre de la menor, ante cuyo juez ésta, según se sostenía por el demandado, había hecho manifestaciones contrarias a las hechas en el juicio. Sobre los mismos extremos que hubiera podido declarar el juez municipal, declaró la secretaria de la propia corte, quien también como el juez, estuvo presente y oyó declarar a la testigo. A pesar de esto el juez inferior dió crédito a esa declaración.

*La sentencia será confirmada.*