EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FEDERICO CORDERO, acusado y apelante.

Número 16207.

*Reasignado:* 6 de febrero de 1961. *Resuelto:* 11 de abril de 1961.

380

René Muñoz Padín, Rafael Barbosa, Ernesto Juan Fonfrías, Rubén Gaztambide Arrillaga y Ángel Viera Martínez, abo-

gados del apelante; *Juan B. Fernández Badillo, Secretario de Justicia,* y *Arturo Estrella, Fiscal, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El Fiscal de Distrito de San Juan formuló acusación contra el señor Federico Cordero por el delito de mutilación (artículo 212 del Código Penal, 33 L.P.R.A. sec. 671) consistente en que el día 19 de febrero de 1956, "ilegal, voluntaria, maliciosamente y con intención criminal", acometió y agredió con un vaso de cristal al señor Carlos Nevares, "rompiéndole éste en la cara e infiriéndole heridas mutilantes que produjeron la alteración y desfiguración permanente" del rostro del agredido.([1]) El proceso se celebró por tribunal de derecho, que declaró culpable al acusado y le impuso una pena indeterminada de uno a cinco años de presidio.

Contra esta sentencia se entabló recurso de apelación. Se apunta la comisión de dieciocho errores por el juez de instancia. Para conveniencia en la disposición final del caso los hemos clasificado en varios grupos por la afinidad de los planteamientos.

I

■■■ Sostiene el apelante que el tribunal a quo erró al condenar al acusado por el delito imputado sin que se haya establecido por la prueba el elemento de malicia. Para que

---

([1]) La modalidad del delito de mutilación que se imputó al acusado fue incorporada mediante la Ley Núm. 174 de 22 de marzo de 1946 (Leyes, pág. 289), como consecuencia de nuestra resolución en *Pueblo* v. *Beltrán,* 64 D.P.R. 885 (1945). Véase, sobre el requisito de que debe alegarse y probarse que la desfiguración causada es permanente, *Pueblo* v. *Vantapool,* 70 D.P.R. 537 (1949). Hasta la aprobación de la ley mencionada, este delito había tenido en Puerto Rico el mismo concepto que en el derecho común, y se refería, en términos generales, a la privación a un ser humano de un miembro de su cuerpo. De ahí que, si no se establece que la víctima ha quedado inutilizada en algún miembro de su cuerpo, el artículo 286 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 817) dispone que el jurado podrá declarar al acusado culpable de acometimiento y agresión grave o simple. *Pueblo* v. *Díaz,* 32 D.P.R. 888 (1924); *Pueblo* v. *Pérez,* 25 D.P.R. 397 (1917).

el delito de mutilación se entienda cometido no se requiere que se pruebe una intención específica, *Pueblo* v. *Pizarro*, 21 D.P.R. 17 (1914); *Brown* v. *United States*, 171 F.2d 832 (C.A.D.C., 1948); *Kennedy* v. *State*, 270 S.W.2d 912 (Ark. 1954). La malicia premeditada no es tampoco un elemento esencial, y no se requiere prueba de premeditación o deliberación, *People* v. *Wright*, 29 Pac. 240 (Cal. 1892); *Boulding* v. *State*, 177 P.2d 152 (Okla. 1947), pero, de todas formas, tal malicia puede deducirse de la conducta del acusado y las circunstancias que rodean la comisión del delito, *State* v. *Thomas*, 142 P.2d 692 (Kan. 1943) cert. denegado 322 U.S. 739, ya que para estos fines malicia es sinónimo del propósito o designio de causar daño. La malicia queda establecida con prueba de la comisión del acto, a menos que se pruebe satisfactoriamente que el acusado actuó en defensa propia, 19 Cal. Jur. 2d sec. 337. Uno de los objetivos del legislador al definir este delito fue evitar la brutalidad alarmante en los encuentros y ataques personales, y de ahí que se presuma la malicia de la atrocidad del acto en sí, que entre otros casos se deduce de la naturaleza del instrumento o medio utilizado para la agresión. *People* v. *McWilliams*, 197 P.2d 216 (Cal. 1948) (vaso de cristal); *Rankin* v. *State*, 139 S.W.2d 811 (Tex. 1940) (botella); *United States* v. *Bando*, 244 F.2d 833 (C.A. 2, 1957); *Lee* v. *State*, 298 S.W.2d 155 (Tex. 1957) (lanzamiento de ácido al rostro); *Babb* v. *State*, 297 S.W.2d 132 (Tex. 1957) (esposas); *Pate* v. *State*, 177 S.W.2d 933 (Ark. 1944) ("blackjack"). Atendida la agresión probada en este caso mediante el empleo de un vaso de cristal con el cual se golpeó el rostro del perjudicado, se presume que el acusado responde por las consecuencias naturales de tal acto. *Pueblo* v. *Irizarry*, 33 D.P.R. 166 (1924).

## II

La negativa 1) a suspender el juicio debido a que el acusado "no estaba preparado" para entrar a la vista del

caso (Primer Error), y, 2) a concederle un receso de media hora para que el acusado cambiara impresiones con sus abogados a los fines de preparar la repregunta de los testigos de cargo (Quinto Error), alega el acusado que, por constituir un abuso de discreción bajo las circunstancias del caso, debe producir la revocación. Para disponer de esta alegación es preciso que brevemente bosquejemos los hechos relacionados con estos incidentes.

La acusación en el presente caso se radicó el día 24 de febrero de 1956 y la vista del caso se señaló para tres meses después, o sea, en 28 de mayo siguiente: El acusado compareció al proceso representado por cinco abogados, los licenciados Ernesto Juan Fonfrías, Rubén Gaztambide Arrillaga, René Muñoz Padín, Ángel Viera Martínez y Rafael Barbosa. Al iniciarse la vista, el acusado por voz del Lic. Viera solicitó la suspensión para tener "una oportunidad de poder prepararse para el juicio" (T-2) porque: *a*) tanto el abogado principal señor Fonfrías, como los señores Gaztambide Arrillaga y Muñoz Padín, habían estado dedicados durante los días precedentes al juicio a labores de su calidad de miembros de la Asamblea Legislativa; *b*) el señor Viera, quien había sido contratado aproximadamente *dos semanas* antes de la vista, había estado atendiendo otros procesos criminales, y no se encontraba en condiciones de salud para entender en el caso, *c*) los abogados no habían podido reunirse con suficiente anticipación para trazar el plan de defensa ni habían podido "investigar" los miembros de tres paneles de jurado que se habían desinsaculado tres días antes (viernes 25 de mayo). Se aceptó que la fecha señalada para el juicio había sido sugerida por los miembros de la defensa en el acto de la lectura de la acusación (T-7). La solicitud de suspensión fue declarada sin lugar, y acto seguido, la defensa solicitó un receso de *cinco minutos* y el tribunal se lo concedió por *media hora*. Al reanudarse la sesión de la mañana, el acusado renunció al juicio por jurado y se sometió a tribunal

de derecho, alegando que como "él no conoce quiénes lo van a juzgar, ni ha tenido tiempo de averiguarlo, cree que estará en desventaja si se sometiera a un juicio ante jurado" (T-42); ante la insistencia del tribunal ratificó su decisión porque "el acusado y sus abogados creen que Vuestro Honor le haría cumplida justicia" (T-43, 45.) Acto seguido se declaró un receso hasta las 2:30 P.M.; que se prolongó un poco más hasta que llegó el Lic. Fonfrías. Durante la sesión de la tarde del día 28 estuvieron presentes todos los abogados del acusado, y se procedió por el Fiscal a presentar su prueba. La vista continuó los días 29 y 31 de mayo, estando representado el acusado por los licenciados Viera y Barbosa. Este último día se suspendió la vista por enfermedad del Lic. Viera, y se continuó al siguiente día 1 de junio, y en esta ocasión participó el señor Fonfrías. La prueba de cargo terminó el viernes 1 de junio. El acusado presentó su prueba los días 4 y 5 de junio, y en esta última fecha también estuvo presente el Lic. Fonfrías. El caso se sometió sin informes. La transcripción revela que el acusado tuvo en todo momento la asistencia legal del Lic. Viera, quien participó activamente y competentemente en la presentación de la prueba y el contrainterrogatorio de los testigos del Pueblo. Testimonio elocuente de su diligente actividad profesional es la transcripción que consta de tres tomos y 915 folios.

Los hechos reseñados demuestran palmariamente que el tribunal a quo no incidió en abuso de discreción al negarse a suspender la vista, único caso en que tal resolución podría ocasionar la revocación de la sentencia. *Pueblo* v. *Mercado*, 69 D.P.R. 335 (1948); *Pueblo* v. *Arce*, 67 D.P.R. 253 (1947); *Amy* v. *Barceló*, 59 D.P.R. 661 (1942); cf., en relación con solicitudes de suspensión en asuntos civiles *Gómez* v. *Díaz*, 72 D.P.R. 727 (1951); *Pepín* v. *Ready-Mix Concrete*, 70 D.P.R. 758 (1950); *Coll* v. *Tribunal*, 68 D.P.R. 122 (1948). En *Pueblo* v. *Vélez*, 63 D.P.R. 405 (1944) calificamos de frívola y dilatoria una solicitud de suspensión

por motivo de que el acusado no estaba preparado para entrar a juicio; y, en *Pueblo* v. *Morales*, 66 D.P.R. 10 (1946) desestimamos el alegado error cometido al negarse una suspensión fundada en que los dos abogados del acusado estaban físicamente agotados por haber intervenido en otros casos, lo cual les había impedido conferenciar con el acusado. En cuanto a la circunstancia de que tres de los abogados del acusado eran legisladores y se encontraban en sus funciones como tales, y presumiendo la validez de la Ley sobre Privilegios e Inmunidades de los Miembros de la Asamblea Legislativa de 21 de febrero de 1902 (2 L.P.R.A. secs. 12 a 19),[2] tampoco erró el tribunal de instancia ya que la sección 2 (2 L.P.R.A. sec. 13) de la misma sólo declara nulo cualquier señalamiento de juicio en que esté interesado un legislador "como *uno* de no más de *dos abogados* de una de las partes". Además, según se ha expuesto, 1) antes de comenzar a desfilar la prueba del Fiscal, se decretó un receso que se prolongó hasta cerca de las 3:00 P. M., durante el cual el acusado tuvo la oportunidad de conferenciar con sus abogados, y éstos con los testigos, 2) antes de comenzar el acusado a presentar su prueba, tuvo el beneficio de dos días feriados, ya que el Fiscal terminó en la tarde de un viernes y el proceso se reanudó el lunes siguiente; y, 3) aun durante el turno de presentación de la prueba del Pueblo, hubo un receso de un día completo, por ser feriado el día 30 de mayo. (Art. 387 del Código Político (1 L.P.R.A. sec. 71).) La conclusión inevitable es que el acusado tuvo amplia oportunidad para prepararse para la vista del caso, tanto antes como durante la celebración del juicio, y que la suspensión a que nos hemos referido al comienzo de esta discusión, no le causó perjuicio alguno. *Pueblo* v. *Ramos*, 64 D.P.R. 457 (1945). Tampoco el acusado, al solicitar la suspensión, dio cumplimiento a las

[2] Véase, *Claudio* v. *Ortiz*, 29 D.P.R. 435 (1921) y el Artículo III, sec. 14, de la Constitución del Estado Libre Asociado de Puerto Rico.

disposiciones de la Regla 9 de la Administración de los Tribunales (4 L.P.R.A. Ap. II R.9).

### III

■■ Se queja también el apelante de la actuación de la corte sentenciadora al no concederle tiempo suficiente para "investigar" los jurados que habrían de juzgarlo, y permitir, que por esa circunstancia, tuviera que renunciar a su derecho constitucional a juicio por jurado (Duodécimo Error). Ya hemos expuesto las circunstancias en que esta renuncia se produjo, y el error imputado es claramente frívolo. El juez que presidió el proceso no se conformó con las manifestaciones del abogado del acusado, sino que específicamente interrogó al acusado quien manifestó "Yo ratifico todas las frases vertidas aquí por el amigo y defensor señor Viera Martínez" (T-45) y entre ellas la relativa a que "hay cumplida justicia ante Vuestro Honor" (T-44). Por otro lado, no hay irregularidad alguna en la actuación del tribunal al desinsacular el viernes anterior a la vista tres paneles de 24 jurados cada uno para prestar servicio en la sala en donde se ventiló el caso. Artículos 199, 200 y 202 del Código de Enjuiciamiento Criminal (34 L.P.R.A. secs. 631, 632 y 634); *Pueblo* v. *Morales*, 66 D.P.R. 10, 16 (1946). Los 74 jurados que se sortearon formaban parte del panel general de 400 jurados que desde el mes de abril se habían seleccionado por los comisionados de jurado. Cuando menos, el acusado tuvo los meses de abril y mayo para "investigar" los conciudadanos de entre quienes se seleccionarían los doce que en definitiva habrían de juzgarle. Este error tampoco fue cometido.

### IV

■■ Diez errores señala el acusado que se relacionan con la admisibilidad y la exclusión de determinada evidencia, a saber:

(1) al no permitir a la defensa repreguntar a dos testigos de cargo—Juan Ríos y Roberto González—sobre si el primero

había participado en unas primarias en contra del acusado, y el otro, sobre si había combatido políticamente al acusado;

(2) al no permitir que un testigo de defensa relatase las manifestaciones que le hizo el acusado al llegar al Cuartel de la Policía, casi inmediatamente después de haber ocurrido los hechos; y formar estas manifestaciones parte del *res gestæ;*

(3) al permitir que un médico declarase que el rostro del perjudicado estaba mutilado y desfigurado;

(4) al no permitir que la defensa repreguntase al testigo Alfredo Matos sobre la descripción del lugar en donde ocurrieron los hechos, especialmente cuando lo había permitido al Fiscal en el examen directo de otro testigo de cargo;

(5) al no permitir que la defensa contrainterrogara al testigo Roberto González sobre denuncias por "otros delitos" después de haberle el Ministerio Público preguntado si el testigo y el acusado se habían denunciado mutuamente;

(6) al no permitir a la defensa contrainterrogar al perjudicado si había tenido otros incidentes de violencia;

(7) al permitir al Fiscal que para los fines del interrogatorio, y como ilustración, utilizara un vaso que no había sido admitido en evidencia;

(8) al no permitir que un testigo relatara las manifestaciones que le hizo el perjudicado momentos antes de subir al escenario de los hechos;

(9) al hacer el tribunal determinada pregunta a un testigo para esclarecer si dicho testigo abandonó el sitio de los hechos antes que el señor Enrique Ubarri, a quien se anunció como testigo de defensa; y

(10) al hacerle el tribunal determinada pregunta al testigo de la defensa Edgardo Cordero.

Considerando que el juicio no se ventiló ante un jurado, sino ante un magistrado de reconocida experiencia en causas criminales, a poco que examinamos los apuntamientos relacionados, tenemos que concluir que no vemos cómo, presumiendo que constituyera error cualquiera de las actuaciones señaladas, ello daría lugar a la revocación. Baste decir que el tribunal a quo tuvo ante sí suficiente prueba testifical que sostiene la convicción, independientemente de la de los testigos que se pretendió impugnar; que el juez hizo su propia

apreciación personal de la condición del rostro del perjudicado como consecuencia de la agresión, y que la prueba excluída no alteraría en forma sustancial el resultado del proceso.(³) *Pueblo* v. *Garay*, 67 D.P.R. 869 (1947); *Pueblo* v. *Rivera*, 67 D.P.R. 194 (1947). Con lo dicho disponemos también del error al efecto de que la prueba no justifica la convicción. *Pueblo* v. *García*, 78 D.P.R. 88 (1955).

## V

■ Como último error se señala que el tribunal sentenciador actuó movido por pasión, prejuicio y parcialidad. Este apuntamiento se ha convertido en la proverbial rúbrica del señalamiento de errores en las apelaciones criminales, a pesar de que continuamente hemos advertido sobre su improcedencia, a menos que se sustancie en algo más que meras expresiones aisladas entresacadas de las incidencias de un largo y arduo proceso y con la relación de fallos desfavorables al acusado en cuestiones sobre admisión o exclusión de prueba. Hemos examinado cuidadosamente la transcripción de los incidentes de todo el caso, y en verdad encontramos que el juez que presidió el proceso actuó, como fue su norma invariable durante el largo tiempo que honró la magistratura, con entera imparcialidad. Estamos satisfechos de que

(³) En relación con estos errores enumerados en la parte IV de esta opinión, véanse, *a*) sobre observaciones y conducta del juez durante el juicio: *Pueblo* v. *Pieras*, 72 D.P.R. 779 (1951); *Pueblo* v. *Rivera*, 71 D.P.R. 124 (1950); *Pueblo* v. *Cruz*, 62 D.P.R. 831 (1944); cf. *Pueblo* v. *Sanjurjo*, 73 D.P.R. 574 (1952); *Pueblo* v. *Lampón*, 78 D.P.R. 109 (1955); *b*) sobre evidencia apropiada para impugnar un testigo por delitos cometidos, *Pueblo* v. *González*, 80 D.P.R. 208, 210 (1958) en donde se sostiene que como "haber tenido un caso" no significa necesariamente que se ha sido convicto de delito grave, tal prueba no es competente para los fines de impugnación; *Pueblo* v. *Rodríguez*, 62 D.P.R. 778 (1944); art. 244 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 723); *c*) sobre admisión de prueba de opinión, *Pueblo* v. *Munera*, 39 D.P.R. 295 (1929) (arañazo); *Pueblo* v. *Pellicier*, 56 D.P.R. 882 (1940); *Pueblo* v. *Ayala*, 51 D.P.R. 560 (1937); *d*) sobre hechos a que se refieren los reparos de admisibilidad o exclusión cuando han sido establecidos por prueba independiente, *Pueblo* v. *Avilés*, 66 D.P.R. 290 (1946); *Pueblo* v. *Alvira*, 69 D.P.R. 237 (1948); y, *e*) sobre el efecto de exclusión de prueba que tiende a establecer el interés de un testigo, *Pueblo* v. *Rodríguez*, 66 D.P.R. 317 (1946); *Pueblo* v. *Millán*, 66 D.P.R. 243 (1946).

el acusado tuvo un juicio justo, y que lejos de actuar movido por prejuicio, recibió el beneficio del ejercicio de la discreción del juez, especialmente si se consideran los términos benignos de la sentencia impuesta. *Pueblo* v. *Rosado*, 72 D.P.R. 827 (1951); *Pueblo* v. *Monzón*, 72 D.P.R. 72 (1951); *Vázquez* v. *Rivera*, 70 D.P.R. 218 (1949).

*No habiéndose cometido ninguno de los errores señalados, se confirmará la sentencia apelada.*