El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Nos corresponde determinar quién es la persona lla-mada a responder por las cosas que caen o se arrojan de una residencia cuando el evento ocurre en un apartamento de un edificio sometido al régimen de propiedad horizontal. También analizaremos si la responsabilidad que impone el Art. 15(g) de la Ley de Condominios de 2003, Ley Núm. 103 de 5 de abril de 2003 (31 L.P.R.A. sec. 1291m) por violaciones a la diligencia debida en el uso del inmueble, es solidaria.
I
Para noviembre de 1999,(1) la Sra. Oneida Rosario Alba-rrán (también conocida como Oneida de León) arrendó a la Sra. Glenda Vélez Villodas el apartamento 10-D en el Con-dominio Doral Plaza en Guaynabo. Conforme la sentencia del Tribunal de Primera Instancia, el 26 de octubre del 2000 la señora Vélez Villodas “estaba distraída en otros asuntos, no tenía bien conectados los tubos del desagüe de la máquina lavadora o confrontó problemas con la misma, y su falta de previsión y negligencia causó el desborda-miento de aguas de su lavadora que fueron a filtrarse al apartamento 9-D y a su vez al 8-D y 7-D”. Sentencia del Tribunal de Primera Instancia, pág. 1. Cuando la señora Vélez Villodas se percató del incidente, observó un charco de aproximadamente un galón de agua en su cocina. Los restantes galones utilizados en el ciclo del lavado se filtra-ron hacia los pisos inferiores. Como consecuencia de ello, se afectaron los apartamentos propiedad del Sr. Luis Torres Miranda, la Sra. Ofelia Fuentes García y el matrimonio *394 compuesto por el Sr. Confesor Vázquez Riquelme y la Sra. Luisa F. Ibáñez Ramírez de Arellano.
El 23 de marzo de 2001, el señor Torres Miranda, la señora Fuentes García y los esposos Vázquez-Ibáñez pre-sentaron una demanda por daños y perjuicios contra las señoras Rosario Albarrán y Vélez Villodas. Alegaron en la demanda que debido a la exclusiva culpa y negligencia de la parte demandada, sufrieron daños en sus respectivos apartamentos como consecuencia de la inundación. Por ello, adujeron que el apartamento 9-D sufrió daños ascen-dentes a $26,101, de los cuales, $19,024 corresponden a los daños sufridos por la codemandante Ibáñez de Vázquez a raíz de una caída en la que se lesionó la rodilla. Por su parte, los daños al apartamento 8-D fueron valorados en $2,500 y los del 7-D en $1,500.
Según se deduce de las conclusiones de hecho del foro primario, el agua que ocasionó los daños “bajó mayormente por el área de la tubería de la cablería eléctrica entre pisos, ubicad [a] en la pared del pasillo paralelo al área de la co-cina, donde se encuentran las lavadoras en los apartamentos”. Sentencia del Tribunal de Primera Instan-cia, pág. 2; Solicitud de expedición de auto de certiorari, pág. 93. El agua afectó las cajas de los cortocircuitos {breakers) y las paredes de yeso {gypsum board). Además de lo anterior, varios zócalos, así como la pintura, quedaron afectados y debilitados por el agua. Asimismo, los gabine-tes del apartamento 9-D se dañaron.
De las transcripciones adjuntas al expediente se eviden-cia que durante el juicio testificaron las señoras Fuentes García, Ibáñez Ramírez de Arellano y Vélez Villodas, así como el señor Torres Miranda. Declaró también el Sr. Fruto Oquendo Méndez, handyman del Condominio Doral Plaza por más de veintitrés años. Luego de evaluar los es-timados presentados sobre las reparaciones realizadas y aquilatar toda la prueba testifical presentada por los testi- *395 gos, el 25 de junio de 2003 el foro primario dictó sentencia. En ella declaró “con lugar” la demanda presentada por la parte apelada y condenó a las codemandadas a pagar en forma solidaria el total combinado de $12,140, más las cos-tas e intereses a partir de la sentencia, así como un total combinado de $1,500 en concepto de honorarios de abogado.(2)
El foro primario aquilató la prueba testifical y documen-tal presentada, y concluyó que la parte demandada fue ne-gligente y que dicha negligencia, así como la falta de pre-visión, ocasionó daños a los demandantes debido a la inapropiada o inexistente conexión del tubo de desagüe de la máquina lavadora o a posibles desperfectos del aparato. Asimismo, adujo el Tribunal de Primera Instancia que “[l]a responsabilidad de l[a]s demandadas frente a los deman-dantes [era] solidaria, sin perjuicio de la nivelación que procediera], particularmente si el contrato de arrenda-miento entre las demandadas, anunciado pero [no] ofrecido en evidencia, [incluía] algún tipo de relevo de responsabi-lidad o fianza para ese tipo de responsabilidad”. Sentencia del Tribunal de Primera Instancia, pág. 2; Solicitud de ex-pedición de auto de certiorari, pág. 92.
Inconforme con el dictamen, la codemandada Rosario Albarrán apeló. El Tribunal de Apelaciones concluyó que el foro primario no erró al imponerle responsabilidad solida- *396 ria a la señora Rosario Albarrán por los daños ocasionados por la señora Vélez Villodas, independientemente de que ésta tuviese el control absoluto del inmueble arrendado. Entendió el tribunal apelativo intermedio, luego de hacer un análisis de la responsabilidad civil extracontractual y de los conceptos negligencia y previsión, que “hoy en día es casi universal la norma de existencia de solidaridad cuando varias personas intervienen o cooperan en la reali-zación de un daño”. Sentencia del Tribunal de Apelaciones, pág. 10; Solicitud de expedición de auto de certiorari, pág. 46. Asimismo, el tribunal analizó las disposiciones de la Ley de Condominios de 2003, específicamente lo dispuesto por el Art. 15(g), supra,(3) y entendió que éste “crea una causa de acción por daños y perjuicios contra aqu[e]l titular que viole —ya sea por sí o a través de la persona que ocupe su apartamento por cualquier título— el uso que deba darse a cualquier bien común del inmueble. Todo ello, [es] sin perjuicio de las acciones directas que procedan contra dicha persona, o sea, contra el ocupante del apartamento”. Sentencia del Tribunal de Apelaciones, pág. 11; Solicitud de expedición de auto de certiorari, pág. 47. Por ello, dispuso que la Ley de Condominios crea “un prin-cipio de responsabilidad objetiva del titular de un aparta-mento cuyo ocupante viole las reglas de uso de la propie-dad común. ... Es por esto que, en este tipo de caso, el demandante no viene obligado a probar la negligencia del dueño del apartamento”. Id. Ahora bien, el tribunal aclaró que “ [1] a responsabilidad adjudica [da] al dueño del aparta-mento, no impide que dicho titula [r p] resente posterior-mente una acción de nivelación contra la persona que en efecto cometió la violación”. Id. En cuanto a la alegación de la señora Rosario Albarrán de que ésta no es responsable por los daños causados por la inundación ya que el aparta- *397 mentó estaba bajo el control absoluto de la arrendataria, el Tribunal de Apelaciones resolvió que lo dispuesto por el Art. 15(g) de la Ley de Condominios de 2003, supra, la obligaba a observar “la diligencia debida en el uso del inmueble”.
Por otra parte, el foro apelativo intermedio dispuso que el Tribunal de Primera Instancia no erró al admitir como evidencia los testimonios de los demandantes en cuanto a aspectos técnicos de construcción y los estimados prepara-dos por los suplidores, aun cuando éstos no son peritos en la materia. Se basó en que los testigos declararon con res-pecto a hechos que le constaban de propio y personal conocimiento. Expuso el foro intermedio que
[d]e la transcripción de la prueba oral se desprende que el testimonio de las señoras Fuentes García e Ibáñez Ramírez De Arellano, así como el del señor Torres Miranda, giró en torno a las reparaciones que dichos condominos tuvieron que realizar en sus respectivas residencias para corregir los daños causa-dos por la inundación y cuál fue el costo de dichas reparacio-nes. ... De otra parte, en el caso de epígrafe, la apelante —du-rante el juicio— no levantó ningún argumento que cuestionara la forma en que se realizaron las reparaciones o si el costo de [é]stas era, o no, razonable. Del mismo modo, de la transcrip-ción de la prueba oral no surge que se haya desfilado prueba con respecto a dichos aspectos. (Énfasis en el original.) Sen-tencia del Tribunal de Apelaciones, págs. 20-21; Solicitud de expedición de auto de certiorari, págs. 56-57.
Por último, el tribunal distinguió este caso de lo ocu-rrido en Berio v. Royal, 164 D.P.R. 797 (2005). Concluyó que la inundación objeto del presente litigio se debió a una violación del uso de la tubería común del condominio y no como ocurrió en Berio, de la rotura del tubo de la máquina lavaplatos, lo que según el tribunal, “no [podía] catalogarse como una violación al uso de los bienes comunes del condominio”. (Énfasis suprimido.) Sentencia del Tribunal de Apelaciones, pág. 22; Solicitud de expedición de auto de certiorari, pág. 58.
Inconforme con lo anterior, el 19 de septiembre de 2005, *398 la señora Rosario Albarrán recurrió ante nos mediante re-curso de certiorari. El 12 de mayo de 2006 expedimos el auto. Con los alegatos de ambas partes, procedemos a resolver.
II
El Art. 12 del Código Civil, 31 L.RR.A. sec. 12, dispone que “[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este título”. “De acuerdo con este principio de interpretación estatutaria, en diversas ocasiones hemos expresado que una ley de carácter especial prevalece sobre un estatuto de carácter general.” Mun. de San Juan v. Prof. Research, 171 D.P.R. 219, 236 (2007). “En hermenéutica, el género cede ante la especie; lo general ante lo específico.” Ex parte Ramos, 53 D.P.R. 374, 377 (1938). Como nos comenta Vázquez Bote,
[s]uele distinguirse ... un Derecho general y un Derecho particular o singular, llamado también de excepción. Bajo la pri-mera denominación se hace referencia al conjunto de normas objetivas que tienen por finalidad prevenir efectos para el caso de realización de supuestos fácticos, efectos que se previenen en atención solamente a las notas genéricas de los hechos por producirse.
Son, pues, normas dirigidas a la colectividad. Pero frente a estas disposiciones de carácter general y el alcance asimismo general, existen normas que van referidas a regular situacio-nes particulares o individualizadas. Por su limitada finalidad, el Derecho particular implica una conclusión de la norma general, restringiéndola, exceptuándola o suspendiéndola en su eficacia. E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño: El Derecho Civil, teoría general de la norma jurídica, Orford, Equity Publishing Company, 1991, Vol. II, Sec. 4.4, pág. 97.
Ese es precisamente el caso de la Ley de Condominios de 2003. Esta es una ley de carácter especial, cuyo propósito es “hacer viable el derecho a la propiedad indivi *399 dual sobre un apartamiento dentro de un edificio o estruc-tura arquitectónica ...”. Exposición de Motivos de la Ley de Condominios de 2003, supra, págs. 355-356. Por ello, en su Art. 44, esta ley dispone que “[regirá] a todo inmueble so-metido al régimen de Propiedad Horizontal ...”. Id., pág. 410.
Asimismo, como señalamos en Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101, 109-110 (2006),
[d]e acuerdo con lo dispuesto expresamente en el Art. 44 de la Ley [de Condominios, supra,] como de la intención legislativa ..., surge claramente que [la Ley Núm. 103, supra,] se debe aplicar retroactivamente. Y es que sólo de esta forma se cum-pliría con el propósito del legislador de dar por terminadas las situaciones jurídicas indeseables que germinaban como resul-tado de la legislación anterior. ... Por lo tanto, resolvemos que, en virtud de su tenor más razonable y de las poderosas razo-nes de orden público que movieron al legislador a materiali-zarla, la Ley Núm. 103, supra, aplicará retroactivamente. (En-fasis suprimido.)
Conforme a lo anterior, y como el Condominio Doral Plaza está sometido al régimen de propiedad horizontal, procede que apliquemos las disposiciones de la Ley de Con-dominios de 2003 para el análisis de las controversias ante nos.
III
La parte peticionaria aduce que la presente situación de hechos se debe evaluar de acuerdo con el principio enun-ciado en el Art. 1810 del Código Civil, 31 L.P.R.A. see. 5149, y la interpretación que esta Curia le dio a la respon-sabilidad instituida en dicho artículo en Berio v. Royal, supra. Por otra parte, los recurridos señalan que la respon-sabilidad por daños en los que se haya incurrido en un complejo sometido al régimen de propiedad horizontal debe analizarse conforme a las disposiciones de la Ley de Con- *400 dominios, específicamente, lo dispuesto por el Art. 15(g), supra.
A. El Art. 1810 del Código Civil, supra, dispone que “[e]l cabeza de familia que habita una casa o parte de ella es responsable de los daños causados por las cosas que se arrojaren o cayeren de la misma”. Precisamente, en Berio v. Royal, supra, este Tribunal tuvo la oportunidad de analizar lo dispuesto por el Art. 1810 del Código Civil, supra. En ese caso, se suscitó una situación de hechos muy parecida a la que hoy nos ocupa. El dueño de un apartamento sufrió una inundación como consecuencia de la rotura de un tubo de la máquina de lavar platos de otro apartamento. Evaluamos entonces con detenimiento el Art. 1810, supra, y determinamos a quién se refiere el artículo cuando habla del “cabeza de familia”. Dispusimos que cuando se hace alusión al “cabeza de familia” se refiere a que “sólo se impondr[á] responsabilidad al principal o al responsable de la vivienda, en vez de a todos los habitantes de ella o a aquel que de hecho ocasionó la caída de la cosa”. Berio v. Royal, supra, pág. 801. Véase, además, M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1984, T. XXIV, págs. 657-658. Por ello, la responsabilidad corresponderá a la persona que ejerza “el control de la vivienda, aunque no hubiese sido ella quien arrojó o dejó caer la cosa”. Berio v. Royal, supra, pág. 802.
Sin embargo, en Berio v. Royal, supra, no analizamos la situación de hechos al amparo de las disposiciones de la Ley de Condominios, sino únicamente según lo dispuesto por el Art. 1810 del Código Civil, supra. Es decir, limitamos la controversia a definir quién es la “cabeza de familia”. Ahora, tenemos la oportunidad de atender esta situación de acuerdo con las disposiciones de la Ley de Condominios de 2003.
B. Las reglas generales que gobiernan el uso de *401 los apartamentos están esbozadas en el Artículo 15(g) de la Ley de Condominios de 2003, supra:
Art. 15. Reglas que gobiernan el uso de apartamientos; infrac-ción dará lugar a acción de daños
El uso y disfrute de cada apartamiento estará sometido a las reglas siguientes:
En el ejercicio de los derechos propietarios al amparo de esta ley regirán los principios generales del derecho, particu-larmente, los enunciados en el Artículo 1-A de esta Ley.
La infracción de estos principios o la de las reglas enumera-das en los incisos subsiguientes dará lugar al ejercicio de la acción de daños y perjuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corres-ponda en derecho, incluidos los interdictos, las dispuestas en la Ley Sobre Controversias y Estados Provisionales de Derecho y cualquier otro remedio en equidad.
(g) Todo titular observará la diligencia debida en el uso del inmueble, y en sus relaciones con los demás titulares, y res-ponderá ante éstos por las violaciones cometidas por sus fami-liares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título, sin perjuicio de las acciones directas que procedan contra dichas personas. (Enfasis suplido.)
Las disposiciones incluidas en el Art. 15(g) de la Ley de Condominios de 2003, supra, fueron añadidas original-mente con las enmiendas realizadas en 1976 a la Ley de Propiedad Horizontal de 1958, Ley Núm. 104 de 25 de ju-nio de 1958. Esa fue la primera pieza legislativa en Puerto Rico que reguló en forma detallada y adecuada la institu-ción de los condominios.
Posteriormente, con la Ley Núm. 157 de 4 de junio de 1976 se enmendaron varias disposiciones de la Ley Núm. 104, supra, y entre ellas se incluyó en el Art. 15(f), concer-niente a la diligencia debida en el uso del inmueble y a la responsabilidad por violaciones de cualquiera que ocupe el apartamento. (4)
*402 El Prof. Michel J. Godreau nos dice que el inciso (f) del Art. 15 clasificaba los deberes que emanan de la conside-ración a los derechos de los residentes. M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, Río Piedras, Ed. Dictum, 1992, pág. 150. Particular-mente, dicho inciso
... apoya la obligación de todo titular de permitir el acceso a su apartamiento cuando ello sea necesario para evitar daños a otros apartamientos, incluso cuando el titular no se encuentra ni hay persona encargada. Es frecuente el caso de roturas en las tuberías de pisos superiores que causan inundaciones y daños a otros apartamentos inferiores cuando los residentes del apartamiento en cuestión están fuera del condominio, a veces hasta fuera del país. Distinto a lo que ocurre en una casa solariega, o incluso en casos de averías en un apartamiento que por su ubicación no afecte a otros, cuando se trata de inundaciones en los pisos superiores, la rotura no puede per-manecer desatendida hasta que regrese el residente. Por ello es aconsejable que el Reglamento disponga la autorización de los titulares para que la administración del condominio pueda entrar al apartamiento en cualquier caso de emergencia. No obstante, en ausencia de una disposición reglamentaria al efecto, tal facultad está implícitamente reconocida en este in-ciso (f), amén de que la misma se deriva también de los debe-res inherentes a las relaciones de vecindad. Id., págs. 150-151.
C. Cuando ocurren daños debido a filtraciones o caídas de líquidos en complejos de viviendas por pisos, el *403 precepto a invocarse no es el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. see. 5141, ya que “el propio Código tiene una solución concreta y adecuada para este caso en la que se prescinde de la prueba de la culpa estableciendo lisa y llanamente la responsabilidad objetiva. Nos referimos al artículo 1.910 [equivalente al 1810 en nuestro Código]”. M. Batlle Vázquez, Los daños causados por filtración o caída de líquidos y el artículo 1910 del Código Civil, XX, (Núm. 1) Anales de la Universidad de Murcia 7 (1968). Nos ex-plica el autor que
... el Código establece un sistema perfecto que se desenvuelve sucesivamente en tres artículos, a saber, el 1.902, el 1.903 y el 1.910 [equivalentes al 1802, 1803, y 1810 en Puerto Rico]. En el 1.902 resulta implícitamente la exigencia de probar la culpa por parte del demandante. En el 1.903, que establece la res-ponsabilidad por otro, por la culpa indirecta o in vigilando, el demandante no ha de probar la culpa, sino que produce una inversión de la carga de la prueba y son los demandados lo que han de probar «que emplearon toda la diligencia de un buen padre de familia para prevenir el daño»”. Y en el artículo 1.910 [1.810 en Puerto Rico] la responsabilidad ya no ha de ser probada por nadie. El cabeza de familia responde, sin más, del daño ocasionado por las cosas caídas desde su casa. Sólo habrá que probar esta última circunstancia y el efecto dañoso. Batlle Vázquez, supra, págs. 7 y 8.
Por todo lo anterior, Batlle Vázquez concluye que el “art. 1.910 español (equivalente al 1810 de nuestro código) es una excepción al 1.902 y 1.903 [1802 y 1803 en Puerto Rico]”. Batlle Vázquez, supra, pág. 12. El autor considera que la omisión de toda mención de voluntariedad relativa a intención o culpa nos permite señalar que la solución del Art. 1810 es diferente de la de nuestros Arts. 1802 y 1803, ya que el Art. 1810 establece una responsabilidad objetiva, íd., págs. 12 y 13.
Para sustentar aún más esta conclusión, Batlle Vázquez señala que
... en el periodo de elaboración parlamentaria de la Ley de Propiedad Horizontal [española] se presentó -una enmienda ... *404 en la que se pedía, para evitar dificultades e intranquilidades de los propietarios que se estableciera de modo expreso el principio de responsabilidad objetiva por los daños producidos en los pisos. Esto no pareció conveniente a la Comisión de Justicia, y así hubimos de exponerlo cuando el proyecto se presentó a la aprobación de las Cortes, y las razones fueron que siendo los daños de diferente condición y entidad no era prudente que se prescindiera de la necesidad de la culpa, y porque se estimó que en estos puntos de efusión y derrama-miento, ya estaba consagrado lo que se pedía y no procedía derogar principios más generales. Es decir, que el caso estaba perfectamente regulado en el Código civil. Precisamente en el artículo 1.910 que ahora hemos comentado, y que es de apli-cación típica en las relaciones de vecindad que de otra suerte quedarían muy malparadas.
En resumen, la responsabilidad impuesta en el Art. 1810 de nuestro Código Civil es de carácter objetivo, que incluye dentro de su amplia cobertura las situaciones que involucran filtraciones o caídas de líquidos en complejos de apartamentos. Sin embargo, ello no prohíbe que en una ley especial se incluya una disposición para responsabilizar a otra persona a quien se considera como “cabeza de fami-lia”, con el propósito de repartir la responsabilidad entre los cocausantes del daño.
Como señalamos en Berio v. Royal, supra, la responsabilidad impuesta en el Art. 1810 del Código Civil, supra, no recae en el dueño del lugar de donde se arroja o caen las cosas, sino “en el principal o el responsable de la vivienda”. Es decir, no es responsable quien arrojó o dejó caer la cosa, sino quien tiene el control de la vivienda. Ahora bien, de una lectura del citado Art. 15(g) de la Ley de Condominios de 2003, podemos concluir que cuando las cosas se caen o se arrojan desde un complejo de viviendas sometido al régimen de propiedad horizontal, la responsabilidad no es precisamente de quien tenga la posesión de hecho de la vivienda, sino que el responsable es el dueño del apartamento.
¿Podemos decir entonces que el legislador puertorri-queño quiso instituir en el Art. 15(g) de la Ley de Condo- *405 minios, además de una responsabilidad objetiva, una res-ponsabilidad por el hecho ajeno?
D. Como norma general, “la obligación de reparar daños, ... dimana de un hecho propio”. Hernández Vélez v. Televicentro, 168 D.P.R. 803, 814 (2006). “En el derecho civil nos referimos a la responsabilidad que establece el Art. 1803, como responsabilidad por el hecho ajeno o al hecho ajeno.” C.J. Irizarry Yunqué, Responsabilidad civil extracontractual: un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico, 6ta ed., Panamericana Formas e Impresos S.A., 2007, pág. 362. Cuando responsabilizamos “a alguien por los actos dañosos de otro bajo el art. 1803 del Código Civil, se hace a base de un supuesto de culpa o negligencia de su parte ...”. íd. Con ello, se activa la presunción de que a quien se le imputa la responsabilidad del otro no empleó “ ‘toda la diligencia de un buen padre de familia para prevenir el daño’ ”. íd. El Art. 1803 establece
“una presunción legal de la culpabilidad de las personas cita-das en él, pues, en razón a las relaciones de autoridad o supe-rioridad que mantienen con los autores del daño causado, la ley presume que les es imputable la causa del mismo por su propia culpa o negligencia, considerándoles como autores mo-rales de dicho daño, por no haber puesto de su parte el cuidado o la vigilancia necesaria para evitar que aquéllos dieran ori-gen a él.” íd.
En torno a este particular, Puig Peña apunta que el de-ber de responder impuesto por el Art. 1903 del Código es-pañol (equivalente al Art. 1803 de nuestro Código Civil) es de tipo legal. Asimismo, añade que
... se precisa [en el art. 1903] una declaración del legislador por virtud de la cual se articula en otra persona la obligación de resarcir los daños causados. De ahí se infiere que las pres-cripciones del artículo 1903 son taxativas o de numerus clau-sus; lo que no obsta, claro está, para que a personas no men-cionadas nominatim se les declare responsables a virtud de la *406 fórmula general del artículo 1902. Ahora bien: existe una singular diferencia. Cuando a personas no declaradas responsa-bles por el legislador se intenta responsabilizar a título de haber incurrido en culpa in vigilando o in eligendo, es absolu-tamente necesario probar esta culpa; en cambio, en estas res-ponsabilidades por hechos ajenos consignadas nominatum por el legislador hay una presunción de culpa en contra del res-ponsable; luego tendrá que cargar con la prueba, demostrando que empleó toda la diligencia de un buen padre de familia para prevenir el evento ..., si quiere verse libre de la acusación. (Énfasis y escolio suprimidos.) F. Puig Peña, Tra-tado de Derecho Civil español, 2da ed., Madrid, Ed. Edersa, 1973, T. IV, Vol. II, págs. 684-685.
Puig Brutau concurre con Puig Peña en que el Art. 1903 del Código Civil español “no impide que personas no men-cionadas en el mismo sean declaradas responsables con ocasión del daño que otras han producido ...”. J. Puig Bru-tau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, pág. 106.
Como podemos apreciar, los tratadistas señalan una diferencia cuando la responsabilidad por el hecho ajeno surge a consecuencia de alguno de los supuestos de respon-sabilidad enumerados en el Art. 1803 del Código Civil, o cuando la responsabilidad emana en virtud de otra ley. Este artículo no le requiere al demandante probar la culpa del que es llamado a responder por el hecho ajeno, ya que el mismo artículo hace responsable a este último por su conducta. Por el contrario, cuando otra ley especial llama a responder por el hecho ajeno es necesario que quien alega esa responsabilidad pruebe que la ley hace responsable al demandado.
Ahora bien, no siempre hay que probar la culpa del que es llamado a responder por el hecho ajeno. El legislador puede crear una responsabilidad en términos absolutos, es decir, una responsabilidad objetiva. La base de este supuesto es que “ ‘[t]odo el que mediante su actividad crea un riesgo de dañar a otro, debe ser siempre responsable de *407 este daño, si se produce, sin necesidad de ninguna culpa personal’. Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853, 857 (1976). Existe consenso en que “la norma de la responsabilidad subjetiva, esto es, la responsabilidad ba-sada en culpa, prevalece como regla general...”. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, San Juan, Pubs. J.T.S., 1986, Vol. II, Sec. 15.01, pág. 873. Sin embargo, “el legislador y los tribunales reconocen la insuficiencia de esta norma y los resultados injustos que pueden resultar de su aplicación en ciertas clases de activi-dades que resultan dañosas para algunas personas. Como consecuencia, en ciertos supuestos ... o leyes especiales im-ponen responsabilidad de naturaleza objetiva”. íd.
Eso fue lo que precisamente hizo el legislador puertorriqueño en la Ley de Propiedad Horizontal. Con el propósito de otorgar mayores garantías a los titulares que se vean perjudicados por los actos de otros titulares o de un tercero, el legislador instituyó una responsabilidad objetiva por el hecho ajeno. Esta responsabilidad por el hecho ajeno, aunque no es una de las enumeradas en el Art. 1803 del Código Civil, supra, tiene la peculiaridad de no requerir al perjudicado que pruebe la culpa de quien le ocasionó el daño. Basta con que el peijudicado reclame al titular del apartamento desde donde se arrojó o cayó la cosa que ocasionó el daño. El legislador le relevó de tener que probar quién le causó el daño. En su lugar, como veremos, transfirió esa tarea al titular responsable, quien retiene la facultad de instar una acción de nivelación contra los terceros responsables del daño por su culpa o negligencia.
E. En Puerto Rico rige el principio de solidaridad de los cocausantes de un daño ante el peijudicado. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701 (1987). La solidaridad rige “[c]uando dos o más personas son llamadas a responder legalmente como cocausantes de un daño que es indivisible ...”. Irizarry Yunqué, op. cit., *408 pág. 343. Por ello, la persona perjudicada “puede exigir reparación del daño a todos o a cualesquiera de ellos, y la interrupción de la prescripción en cuanto a uno perjudica a todos”. íd. La responsabilidad solidaria se da también en-tre los llamados a responder por otro en el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5143. íd. Sin embargo, res-ponsabilizar por el hecho ajeno a la persona que no oca-sionó el daño no exime de responsabilidad al que sí lo ocasionó. íd. Es decir, existirá entre el llamado a responder y el verdadero causante del daño una responsabilidad soli-daria frente al peijudicado. Ahora bien, luego de atendida la responsabilidad frente al perjudicado, entre el llamado a responder y el verdadero causante del daño existirá “un derecho de contribución o nivelación que procede del Art. 1098 del Código Civil, 31 L.P.R.A. see. 3109, el cual per-mite que el deudor solidario que pagó más de lo que corres-pondía reclame las porciones correspondientes a los demás codeudores solidarios”. P.R. Fuels, Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 712 (1999).
En cuanto a la responsabilidad al amparo del Art. 1903 del Código Civil español (Art. 1803 en Puerto Rico), Puig Brutau nos dice, que
[s]i bien es cierto que la solidaridad, al no presumirse, debe expresamente establecerse, hay casos en que la impone el le-gislador en atención a ciertos intereses que quiere tutelar, cual es la decretada como sanción de una falta para que el perjudicado tenga la garantía de poder dirigirse indistinta-mente contra cualquiera de los responsables sin necesidad de fraccionar su reclamación, caracteres y requisitos que concu-rren en las obligaciones del art. 1903 C.c.
Es decir, en ocasiones el legislador, en atención a ciertos intereses que quiere salvaguardar, instaura la solidaridad para que el perjudicado tenga la garantía de poderse dirigir contra cualquiera de los responsables del daño. Lo anterior se establece, claro está, sin perjuicio de la acción de nivelación que proceda entre los demandados.
*409 F. El derecho de contribución entre codeudores solidarios, también llamado de nivelación, de reembolso y de regreso, está reconocido en el Art. 1098 del Código Civil, supra.(5) Véase Soc. de Gananciales v. Soc. de Gananciales, 109 D.P.R. 279, 282 (1979). Un deudor solidario que ha pagado una sentencia en una proporción mayor de la que le correspondía puede exigir de otro deudor solidario el correspondiente reembolso de lo pagado al acreedor. íd., pág. 284. Es decir, “surge a su haber un crédito, que no es otra cosa que el derecho a reclamar la cuantía satisfecha en exceso de su responsabilidad objetiva”. íd., pág. 283.
Con la nivelación se evitan situaciones de enriquecimiento injusto, al distribuir la carga entre todos los responsables. US Fire Insurance v. A.E.E., 174 D.P.R. 846 (2008); S.L.G. Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 654—655 (2003). El derecho de contribución se basa principalmente en la equidad, toda vez que resulta completamente injusto que se permita que el demandante releve a irnos de responsabilidad y dirija la acción exclusivamente contra otros. íd.
IV
Con el beneficio de la doctrina anteriormente esbozada, procedemos a resolver las controversias ante nos.
El complejo de apartamentos Doral Plaza está sometido al régimen de propiedad horizontal. Como la Ley de Con-dominios de 2003 es de carácter especial, procede que apli-quemos sus disposiciones al analizar este caso.
*410 Sin lugar a dudas, el Art. 15(g) de la Ley de Condomi-nios impone una responsabilidad objetiva al titular del apartamento. A su vez, este artículo responsabiliza al titular por el hecho ajeno, es decir, por el daño ocasionado por cualquier visitante, empleado, familiar o persona que ocupe el apartamento por cualquier título. En este caso, la señora Vélez Villodas ocupaba el inmueble a título de arrendataria. Por ello, la peticionaria Rosario Albarrán responde por las violaciones cometidas por su inquilina, la señora Vélez Villodas. Eso dispone el Art. 15(g), supra, cuando obliga a “[t]odo titular [a observar] la diligencia debida en el uso del inmueble, y en sus relaciones con los demás titulares, y [a responder] ante éstos por las violacio-nes cometidas por sus familiares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título ...”.
El Art. 15(g) menciona que el deber del titular de responder por los hechos ajenos es “sin peijuicio de las acciones directas que procedan contra dichas personas”. Ello se re-fiere a la facultad que tiene el peijudicado de reclamarle al visitante, empleado, familiar o persona que por cualquier título ocupe el apartamento y haya ocasionado el daño. Esa acción es distinta de la que la persona peijudicada tiene contra el dueño del apartamento. Con esta última aclara-ción, el legislador reconoció la facultad del peijudicado para dirigirse indistintamente contra cualquiera de los responsa-bles, sin necesidad de fraccionar su reclamación.
Para sustentar su alegación de que el Art. 15(g) de la Ley de Condominios de 2003 no le imponía el deber de responder por los daños ocasionados en los apartamentos de los demandantes, la parte peticionaria aduce que el foro intermedio erró al concluir que del Art. 15(g) emana “una fuente de derecho torticero”, ya que lo único que a su en-tender persigue este artículo es “regular la conducta entre los titulares, su familia, visitantes, y] otras personas entre sí. Propiamente no es una fuente de negligencia contrac *411 tual o extracontractual...”. Solicitud de expedición de auto de certiorari, pág. 17. La peticionaria alega que el legisla-dor no quiso crear una fuente independiente de responsa-bilidad, pues el Código Civil ya la establece de manera amplia.
El Art. 1810 del Código Civil, supra, es la disposición de la ley general que rige los eventos específicos de los daños que se causan por las cosas que se caen o se arrojan desde una vivienda. Ahora bien, esa ley general regula un evento específico. Sin embargo, existe una clara diferencia cuando evaluamos a quién responsabiliza la ley especial por ese tipo de daños. Cuando el daño ocurre en un inmueble no sometido al régimen de propiedad horizontal responde "el principal o el responsable de la vivienda”, es decir, el poseedor de hecho. En cambio, cuando los daños ocurren en un complejo de apartamentos sometido al régimen de propiedad horizontal, responde el titular del apartamento, es decir, el titular de derecho. A su vez, como la responsabilidad del titular es sin peijuicio de las acciones directas que procedan contra la persona o personas que ocasionaron el daño, debemos concluir que si el perjudicado decide ir no sólo contra el titular sino también contra los que le ocasionaron el daño, la responsabilidad de todos éstos frente al titular perjudicado será solidaria. íd. Por ello, concluimos que la responsabilidad impuesta en el Art. 15(g) de la Ley de Condominios de 2003, supra, es solidaria entre el titular del apartamento y cualquier familiar, visitante, empleado o persona que ocupa el apartamento y sea responsable del daño causado.
Asimismo concluimos, al igual que el foro intermedio, que la responsabilidad impuesta por el Art. 15(g) es objetiva. De un análisis de ese artículo podemos atisbar que: (1) se trata de una responsabilidad absoluta de parte del titular del apartamento; (2) no hace diferencia que el daño sea causado por familiares, visitantes, empleados o por las personas que ocupen el apartamento; (3) no hay que *412 probar culpa o negligencia, y (4) la responsabilidad que deriva del artículo es solidaria.
Como menciona la última oración del Art. 1803 de nuestro Código Civil, supra, los no titulares llamados a responder por el hecho ajeno pueden demostrar que ejercieron toda la diligencia de un buen padre de familia para prevenir el daño. En cambio, el citado Art. 15(g) de la Ley de Condominios de 2003 impone una responsabilidad absoluta al titular del apartamento. Por ello, a diferencia de los demás cocausantes, el titular del apartamento siempre tendrá que responderle a quien sufre el daño. Lo único que tiene a su haber es la posibilidad de iniciar una acción de nivelación contra la persona que causó el daño.
A tenor con lo anterior, la señora De León responde frente a los recurridos, quienes pueden exigir de ella que les indemnice, por la totalidad de los daños ocasionados en sus apartamentos, en virtud de la responsabilidad que le impone el Art. 15(g) de la Ley de Condominios, supra. Sin embargo, como los recurridos demandaron a su vez a la señora Vélez Villodas, ésta también responde frente a los titulares afectados. Estos últimos también pueden recla-marle a la señora Vélez para que les satisfaga la totalidad de los daños, ya que la responsabilidad impuesta por el Art. 15(g) es solidaria. Asimismo, en caso de que la Sra. Oneida de Jesús sea la única demandada que resarza los daños, ésta tiene a su haber una acción de nivelación contra la señora Vélez Villodas por la cantidad que haya su-fragado por encima de su porciento de responsabilidad.
Del mismo modo, si fuera la señora De León la única que indemnizara a los demandantes recurridos, ella podrá también nivelar con la señora Vélez Villodas.
V
Por último, la peticionaria señala que el Tribunal de Pri-mera Instancia erró al admitir documentos que constituyen *413 prueba de referencia, por no estar apoyados en prueba testifical. Se refiere a los recibos y facturas entregados a los demandantes por las labores de reparación en sus apar-tamentos.
El derecho probatorio establece como norma que para establecer un hecho no se requiere certeza matemática y es suficiente el testimonio de un testigo que merezca credibilidad sin que sea necesario presentar prueba corroborativa. Regla 10(c) y (d) de Evidencia de 1979 (32 L.P.R.A. Ap. IV). Véase Regla 110(c) y (d) de Evidencia de 2009 (32 L.P.R.A. Ap. VI).
En Miranda Soto v. Mena Eró, 109 D.P.R. 473, 482 (1980), señalamos que “ la declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito’ ”. Véanse, además, Alicea v. Sucn. F. Gil Rivera, 87 D.P.R. 789 (1963); Pedraza v. González, 66 D.P.R. 757 (1946). El testimonio de los demandantes recurridos le mereció crédito al tribunal. Con eso era suficiente para probar los daños alegados en la demanda. Incluso, la parte demandada peticionaria tuvo la oportunidad de contrainterrogar a los testigos sobre las cuantías que pagaron para reparar los daños ocasionados a los apartamentos. Por ello, los recibos presentados por los demandantesrecurridos sirvieron como prueba corroborativa de los testimonios de los daños que éstos sufrieron a raíz de la inundación ocurrida en sus apartamentos.
Por otra parte, es norma reiterada que la apreciación de la prueba por la corte a quo no será alterada en apelación cuando un examen de dicha prueba, según aparece de los autos, no convence de que en esa apreciación no se cometió error manifiesto, ni ha mediado pasión, prejuicio o parcialidad. Pérez Rosa v. Morales Rosado, 172 D.P.R. *414 216 (2007); Pueblo v. Acevedo Estrada, 150 D.P.R. 84 (2000); Pueblo v. Rosario Reyes, 138 D.P.R. 591 (1995); Gómez v. Díaz, 72 D.P.R. 727, 728 (1951); Pueblo v. Mercado, 69 D.P.R. 335 (1948).
En este caso se presentó evidencia sustancial de los da-ños ocasionados a los apartamentos, por lo que las conclu-siones del Tribunal de Primera Instancia a ese efecto no serán alteradas. El error señalado no se cometió.
VI
Por los fundamentos antes expuestos, se dictará senten-cia para confirmar el dictamen del Tribunal de Apela-ciones.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la que se unieron las Juezas Asociadas Señora Fiol Matta y Señora Rodríguez Rodríguez.
Opinión disidente emitida por el Juez Presidente Señor Hernández Denton, a la cual se unen las Juezas Asocia-das Señoras Fiol Matta y Rodríguez Rodríguez.
El presente caso requiere determinar quién es la persona llamada a responder por los daños causados por fil-traciones de agua de un piso a otro cuando el evento ocurre en un apartamiento de un condominio sometido al régimen de propiedad horizontal que no está bajo el control de su dueño. Mediante la Opinión que se emite hoy, se resuelve que tanto la arrendadora como la arrendataria son respon-sables solidariamente. Esto, según la responsabilidad que *415 impone el Art. 15(g) de la Ley de Condominios de 2003, Ley Núm. 103 de 5 de abril de 2003 (31 L.P.R.A. sec. 1291m(g)).
Por entender que dicha disposición de la Ley de Condo-minios de 2003 aplica únicamente a violaciones de las re-glas de convivencia que dispone el propio Art. 15 y que, por ende, sólo la arrendataria es la llamada a responder al amparo del Art. 1810 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5149,(1) respetuosamente disentimos.
I
La Sra. Oneida Rosario Albarrán le arrendó a la Sra. Glenda Vélez Villodas un apartamiento en el piso 10 de un condominio en Guaynabo. Casi un año más tarde, la arren-dataria estaba distraída cuando de los tubos de la máquina lavadora se desbordó agua que fue filtrándose hasta los apartamientos inferiores, en los pisos 9, 8 y 7. Los dueños de los apartamientos inferiores afectados presentaron una reclamación de daños y perjuicios al amparo del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, contra la arrendadora y la arrendataria.
Celebrado el juicio, el Tribunal de Primera Instancia (TPI) dictó sentencia y, sin mayor explicación, declaró a ambas demandadas solidariamente responsables —“sin perjuicio de la nivelación que procediera entre ellas”— de los daños reclamados por $12,140.
La señora Rosario Albarrán, dueña del inmueble, apeló la sentencia y el foro apelativo intermedio confirmó la de-terminación de solidaridad hecha por el TPI. Esto, pues entendió que la arrendataria era responsable por su negli-gencia directa según el Art. 1802 del Código Civil de *416 Puerto Rico, supra, y que, según el Art. 15(g) de la Ley de Condominios de 2003, supra, existe una causa de acción por daños y perjuicios contra el titular que viole —ya sea por sí o a través de la persona que ocupe su apartamiento por cualquier título— el uso que deba darse a cualquier bien común del inmueble, irrespectivo de la acción directa que proceda contra el ocupante del apartamiento. La arrendadora acudió ante nos y solicitó que revoquemos la determinación de solidaridad.
II
La Opinión mayoritaria resuelve que aplican dos fuen-tes de derecho al caso de autos. La primera fuente es el Art. 1810 del Código Civil de Puerto Rico, supra. Según dicho artículo, sólo la arrendataria sería responsable, lo que relevaría de toda responsabilidad a la arrendadora. La razón para ello es que el “cabeza de familia” ha sido inter-pretado como el que habita y tiene control inmediato del inmueble. Véase Berio v. Royal, 164 D.P.R. 797 (2005). La segunda fuente de derecho aplicable, según la Opinión ma-yoritaria, es el inciso (g) del Art. 15 de la Ley de Condomi-nios de 2003, supra. En consecuencia, resuelve que esta disposición estatutaria causa que ambas demandadas de-ban responder solidariamente.
Esto, pues según el criterio mayoritario, la Ley de Pro-piedad Horizontal de 1976, Ley Núm. 157 de 4 de junio de 1976, que incluyó el inciso (f)(2) del Art. 15 que da lugar a la controversia de autos, al enmendar la Ley de Propiedad Horizontal de 1958, Ley Núm. 104 de 25 de junio de 1958, creó una fuente de derecho torticero nueva e indepen-diente. Allí, el legislador dispuso que
[t]odo titular observará la diligencia debida en el uso del *417 inmueble, y en sus relaciones con los demás titulares, y res-ponderá ante éstos por las violaciones cometidas por sus fami-liares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título sin perjuicio de las acciones directas que procedan contra dichas personas. 31 L.P.R.A. sec. 1291m(g).
Al leer esa disposición, la mayoría la aplica fuera del contexto completo del Art. 15 de la Ley de Condominios de 2003, supra. Así, concluyen que el titular de dominio del inmueble es responsable de una reclamación de daños y perjuicios que nace del inciso (g) del Art. 15, supra. Es decir, que la referida sección es la fuente de una causa de acción por responsabilidad civil extracontractual, indepen-diente y distinta a la preceptuada específicamente por nuestro Código Civil para este tipo de situación: el Art. 1810, supra. No les asiste razón.
El Prof. José Julián Alvarez González, quién analizó po-sitivamente el desarrollo de nuestra jurisprudencia sobre responsabilidad civil extracontractual en Berio v. Royal, supra, expresó que “pronto ver[ía]mos más casos como Be-rio, ante la popularidad de la propiedad horizontal en nuestro país”. J.J. Alvarez González, Responsabilidad Civil Extracontractual, 75 (Núm. 1) Rev. Jur. U.P.R. 139, 143 (2006). Cinco años más tarde, este Tribunal tiene ante sí un segundo caso que, cabe señalar, ya estaba siendo liti-gado al momento de resolver Berio v. Royal, supra. Sin embargo, esta vez la mayoría decide resolver que una dis-posición estatutaria distinta y anterior a Berio es la que resuelve la controversia.
III
La Opinión mayoritaria en nada varía la responsabili-dad absoluta u objetiva que dispone ese artículo del Código Civil sobre la responsabilidad del “cabeza de familia”. En Berio v. Royal, supra, dijimos que la responsabilidad obje-tiva que obliga a quien esté en control de la propiedad, *418 independientemente de sus circunstancias, busca proteger al demandante al relevarle de tener que probar quién fue culpable o negligente. Asimismo, la jurisprudencia espa-ñola muestra igual interpretación en casos con circunstan-cias idénticas a los hechos de autos. En la Sentencia Núm. 263/1993 de 26 de junio de 1993, T. LIX (Vol. III) Reperto-rio de Jurisprudencia 5383, el Tribunal Supremo español sostuvo que
[l]a mencionada responsabilidad “ex” artículo 1910, limitada exclusivamente, a que, por cualquier título (arrendatario, en el caso que nos ocupa), habita la vivienda, como “principal” o “cabeza de familia” en la misma, no alcanza al propietario-arrendador de dicha vivienda que, como es obvio, no habita en ella.
De igual forma, la Sentencia Núm. 334/2001 de 6 de abril de 2001, T. LXVII (Vol. II) Repertorio de Jurispruden-cia 3636 resolvió que
[e]n materia de daños causados por filtraciones de agua desde los pisos superiores, dice la Sentencia de esta Sala de 20 de abril de 1993 ... que: 1 a. Entre los preceptos que el Código Civil dedica a regular las “obligaciones que nacen de la culpa o negligencia” (Capítulo II del Título XVI del Libro Cuarto), el caso objeto de litis tiene una incardinación o subsunción nor-mativa específica en el artículo 1910 de dicho Cuerpo Legal..., cuyo precepto, ... responsabiliza a dicho “principal” o “cabeza de familia” de los daños causados “por las cosas que se arroja-ren o cayeren de la misma”, dentro de cuya expresión, al no tener la misma carácter de “numeras clausus” (sentencia de esta Sala de 12 de abril de 1984 ...), han de incluirse tanto las cosas sólidas como las líquidas que, de una forma u otra, cai-gan de la expresada vivienda y causen daño a tercero en su persona o en sus cosas. 2 a. La mencionada responsabilidad “ex” art. 1910, limitada exclusivamente como acaba de decirse, al que, por cualquier título (arrendatario, en el caso que nos ocupa), habita la vivienda como “principal” o “cabeza de fami-lia” en la misma, no alcanza al propietario-arrendador de la vivienda que, como es obvio, no habita en ella[.]
Esa misma Sentencia adelanta que otro sería el escena-rio cuando la culpa de los daños proviene de que, como *419 parte de la relación del arrendamiento, el arrendador ve-nía obligado a reparar las instalaciones del inmueble y, al no hacerlo oportunamente, causó daños a un tercero.
Igualmente, la Sentencia Núm. 1243/2007 de 4 de diciembre de 2007, T. LXXIV (Vol. I) Repertorio de Jurispru-dencia 39, descartó responsabilizar al arrendador de una vivienda de la cual cayó una maceta y le causó la muerte a alguien. Allí, el Supremo español sostuvo que descartaba la aplicación del Art. 1903 sobre responsabilidad vicaria por actos u omisiones ajenas, es decir, de la arrendataria, y del Art. 1902 del mismo cuerpo legal. Esto, pues ello equival-dría a hacer responsable al arrendador y extender así el ámbito del Art. 1910 a sujetos distintos del habitante de la casa en contra de la doctrina, lo que, a su vez, impondría un deber de vigilancia o supervisión de la conducta del inquilino.
IV
Distinto a la Opinión mayoritaria, nuestra interpreta-ción del Art. 15 de la Ley de Condominios de 2003, supra, es que éste sólo venía a lograr una acción de daños para obligar a los titulares a adherirse a las reglas que señala el mismo Art. 15 en su totalidad y a las normas de conviven-cia de la vida en un inmueble sometido al régimen de pro-piedad horizontal recogidas en los reglamentos de los condominios.
El Art. 15 de la Ley de Condominios, supra, tiene su origen en el Art. 15 de la Ley de Propiedad Horizontal de 1958, supra.(3) Allí, la Asamblea Legislativa incluyó una *420 serie de “reglas” para el uso y disfrute de este tipo de in-mueble, y reconoció el derecho a presentar una acción en daños y peijuicios contra quienes violaran esas reglas.
Así, al discutir las disposiciones de la Ley Núm. 157 de 1976 que afectan los deberes de la consideración a los de-más residentes, nos dice el profesor Godreau que “[e]stas disposiciones ... no derogan, sino que complementan los ar-tículos 1807 a 1810 del Código Civil que imponen una res-ponsabilidad particular a los dueños de edificios”. (Enfasis suplido y escolio omitido.) M.J. Godreau, El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico, Río Piedras, Ed. Dictum, 1992, pág. 150. Véase, además, el Art. 15 de la Ley Núm. 104 de 1958, supra, que al igual que el Art. 15 de la Ley Núm. 157 de 1976, en todo mo-mento se refería a las obligaciones que impone dicho artí-culo al titular del apartamiento sobre las reglas allí dispuestas. Al examinar la Ley Núm. 153 de 11 de agosto de 1995 y la nueva Ley de Condominios de 2003, Ley Núm. 103 de 5 de abril de 2003, que enmendaron la anterior Ley de Propiedad Horizontal de 1976, vemos que el texto del anterior Art. 15(f) no fue alterado.
Al analizar el contexto completo de ese artículo es evi-dente que no se trata de una nueva acción para cualquier *421 evento de responsabilidad civil extracontractual. El Art. 15 en su totalidad dispone:

Reglas que gobiernan el uso de apartamientos; infracción dará lugar a acción de daños

El uso y disfrute de cada apartamiento estará sometido a las reglas siguientes.
En el ejercicio de los derechos propietarios al amparo de este capítulo regirán los principios generales del derecho, particu-larmente, los enunciados en el Articulo 1-A de esta Ley.
La infracción de estos principios o la de las reglas enumera-das en los incisos subsiguientes dará lugar al ejercicio de la acción de daños y peijuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corres-ponda en derecho, incluidos los interdictos, las dispuestas en la Ley sobre Controversias y Estados Provisionales de Dere-cho, sees. 2871 et seq. del Título 32, y cualquier otro remedio en equidad.
(a) Cada apartamiento se dedicara únicamente al uso dis-puesto para el mismo en la escritura a que se refiere la see. 1291 de este título.
{b) Ningún ocupante del apartamiento producirá ruidos o molestias ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos.
(c) Los apartamientos no se usarán para fines contrarios a la ley, a la moral y a las buenas costumbres.
(d) Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad y mejo-ras de su apartamiento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación y seguridad, tan pronto sea necesario para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamiento ven-drá obligado a permitir en su unidad las reparaciones o traba-jos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamiento para su realización.
(e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con co-lores o tonalidades distintas a las del conjunto. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio.
Una vez las agencias concernidas emitan un aviso de hura-cán o tormenta, el uso de cualquier tipo de tormentera tempo- *422 rera o removible no constituirá alteración de la fachada. En cuanto a las permanentes, la Junta de Directores solicitará cotizaciones y alternativas de diseño, tipo y color específico y se las presentará al Consejo de Titulares, que por votación mayoritaria decidirá las que se instalarán. Las tormenteras temporeras deberán removerse pasado el aviso de huracán o tormenta o luego de ocurrir el siniestro, salvo que el área pro-tegida por ellas quede de tal forma averiada' que éstas consti-tuyan la única protección provisional.
Cuando a juicio del perito no se puedan reparar o sustituir los equipos o elementos originales del edificio que forman parte de su diseño arquitectónico, tales como ventanas, puer-tas, rejas u ornamentos, el Consejo de Titulares decidirá por voto mayoritario el tipo y diseño del equipo o elemento que sustituirá al original. Cualquier titular que interese sustituir tales elementos o equipo, tendrá que hacerlo conforme al tipo y diseño adoptado por el Consejo. La imposición a todos los titulares de efectuar la sustitución requerirá que se cumpla con los requisitos dispuestos en el inciso (d) de la sec. 1293b de este título sobre obras de mejora.
(/) Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de constitución, y a lo especialmente establecido, conforme al in-ciso (f) de la sec. 1293b de este título, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares.
(g) Todo titular observará la diligencia debida en el uso del inmueble, y en sus relaciones con los demás titulares, y res-ponderá ante estos por las violaciones cometidas por sus fami-liares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título, sin perjuicio de las acciones directas que procedan contra dichas personas.
(h) Ningún titular u ocupante de una unidad podrá instalar o adherir objeto alguno en las paredes que pueda constituir un peligro para la seguridad de cualquier persona, de la propie-dad comunal o la privada.
(i) Todo titular u ocupante cumplirá estrictamente con las disposiciones de administración que se consignen en este ca-pítulo, en la escritura a el Reglamento a que se refiere la see. 1293 de este título.
(/) El adquirente de un apartamiento cuyo transmitente no sea el desarrollador, administrador interino o constituyente del régimen, acepta la condición manifiesta de los elementos *423 comunes del condominio en la forma en que éstos se encuen-tren físicamente al momento de adquirir, y se subroga en la posición del transmitente en cuanto a los derechos que tenga sobre iniciar cualquier acción en la que se impugne el cambio por violación a este capítulo, a la escritura matriz o al regla-mento del condominio. A este adquirente se le atribuirá el co-nocimiento de los cambios manifiestos que existan en el in-mueble para todos los efectos de la tercería registral. 31 L.P.R.A. sec. 1291m.
El inciso (g), a nuestro entender, ofrece a los titulares una acción para someter a los demás dueños al cumpli-miento de las reglas que se disponen en las Secs. 15(a) a la 15(f) y 15(h) a la 15(j). No es una causa de acción indepen-diente, nueva y sin delimitaciones para lograr la responsa-bilidad civil extracontractual por cualquier causa, o lo que sería adoptar un nuevo precepto de responsabilidad vicaria en nuestro ordenamiento. De ahí que se haya resuelto que lo aplicable a esta situación es el Art. 1810 del Código Civil, supra, y que el Profesor Godreau sostenga que esas normas no venían a variar los artículos del Código sino a complementarlos.
De ahí, también, que en un análisis de las referidas en-miendas de 1976 comenté que la enmienda al Art. 15 de la Ley de Propiedad Horizontal
... permitirá a cualquier titular instar [una acción de daños y perjuicios] contra el titular cuyos familiares, visitas, emplea-dos, inquilinos o personas que ocupen su apartamiento por cualquier título, violen las reglas a las que está sometido el uso y disfrute del apartamiento. La posibilidad de enfrentarse a una demanda en daños y perjuicios desalentará la morosidad en el pago de las cuotas de mantenimiento y la indiferencia de algunos titulares en cuanto a las actividades que otras perso-nas llevan a cabo en su apartamiento. (Énfasis suplido.) F. Hernández Denton, La Ley de Propiedad Horizontal: un aná-lisis de las enmiendas del 1976, 44 Rev. C. Abo. RR. 266, 269 (1983).
La opinión mayoritaria nos pide que hagamos urna lec-tura distinta del Art. 15 de la Ley de Condominios de 2003, supra, pues sostiene que, a pesar de la jurisprudencia del *424 Art. 1810 del Código Civil de Puerto Rico, supra, y del Art. 1910 del Código español, el legislador puertorriqueño quiso añadir una nueva disposición de responsabilidad vicaria. Conviene, entonces, examinar ligeramente el Historial Le-gislativo de la Ley Núm. 157 de 1976, que añadió la dispo-sición legal en controversia: el Art. 15(g). de la actual Ley de Condominios de 2003, supra, y la interpretación que se ha hecho de ésta.
En un memorando que envié a la Asamblea Legislativa cuando propuse el Proyecto de la Cámara Núm. 1862 de 1976 y que está en el Informe de la Comisión de Asuntos del Consumidor de la Cámara de Representantes de 11 de marzo de 1976 —comisión presidida por el Hon. José G. “Pincho” Izquierdo— sostuve que, con relación al Art. 15 allí propuesto,
[l]a enmienda al último párrafo es a los fines de aclarar que el titular u ocupante de un apartamiento, que resulte afectado por la infracción de las reglas que el artículo enumera, no está limitado a solicitar el remedio de daños y perjuicios, sino que éste es uno de los remedios que puede utilizar entre aquellos que correspondan en derecho. (Enfasis suplido.) Memorando del Secretario de Asuntos del Consumidor, Hon. Federico Her-nández Denton, de 11 de marzo de 1976.
Este análisis recibe idéntico apoyo en otras fuentes de nuestra literatura jurídica. Expresa el profesor Godreau, refiriéndose al inciso (g)(4) del Art. 15 de la Ley Núm. 157 de 1976, en su obra de 1992, que
... cualquier titular u ocupante que se vea perjudicado por-que otro haya infringido dichas reglas podrá recurrir contra el infractor en una acción por daños. El propósito de permitir a cada titular afectado llevar este tipo de acción es desalentar, por un lado, la morosidad en el pago de las cuotas y, por otro, ei incumplimiento del resto de las obligaciones reglamentarias. (Enfasis suplido.) Godreau, op. cit., pág. 149.
*425 También, vemos que tras citar extensamente las dispo-siciones del Art. 15 de la Ley de Condominios de 2003, supra, Carmelo Campos Cruz sostiene:
La infracción a estas reglas dará lugar al ejercicio de la ac-ción de daños y perjuicios por aquél titular u ocupante que resulte afectado, además de cualquier otra acción que corres-ponda en derecho.
Vemos cómo permean en dicha disposición estatutaria las exigencias y restricciones en el uso, encaminadas a evitar que el condomino utilice su propiedad para causar perturbaciones y daños al resto de los titulares. C. Campos Cruz, Considera-ciones en torno a la aplicación de la doctrina del abuso del derecho en el ámbito de la propiedad horizontal, 63 Rev. Jur. 887, 905 (1994).
Así, Campos Cruz describe de qué tratan esas reglas a las que hace alusión el Art. 15.
V
Por todo lo anterior, en el caso de autos sólo hacía falta, aplicar la bien establecida norma de Berio v. Royal, supra. Ello, pues es evidente que el citado Art. 15(g) de la Ley de Condominios de 2003, que existía antes de nuestra opinión en Berio, no venía a variar la acción objetiva, específica y directa del Art. 1810 de nuestro Código Civil, supra. No cabe duda de que la arrendataria del apartamiento es la única responsable de los daños causados por las aguas que cayeron del mismo. Resolver lo contrario, como hoy hace este Tribunal, es imputarle al legislador puertorriqueño la intención de crear una nueva causa de acción por respon-sabilidad vicaria que impondría un deber de vigilancia y supervisión insostenible a todos los arrendadores del país. Nos preocupa, además, que ese análisis resulte en una re-glamentación impropia, pues le corresponde en última ins-tancia a la Asamblea Legislativa. Por cuanto, habría revo-cado la determinación de solidaridad dictada por el Tribunal de Apelaciones.

 No consta con precisión la fecha del contrato de arrendamiento. Ni siquiera consta si, en efecto, existe un contrato escrito de arrendamiento. La transcripción del juicio revela que la Sra. Glenda Vélez Villodas indicó que comenzó a vivir en el apartamento en noviembre de 1999. Véase Transcripción de la vista en su fondo, Apéndice de la Solicitud de expedición de auto de certiorari, pág. 21.

 En específico, el tribunal condenó a las señoras Rosario Albarrán y Vélez Villodas a pagar, solidariamente, a la señora Fuentes García la cantidad de $1,700 por los daños físicos a la propiedad. Además, adjudicó la cantidad de $500 más costas y $500 de honorarios de abogado por daños emocionales. En cuanto al codemandante Luis Torres Miranda, el tribunal ordenó el pago de $2,140 por los daños a la propie-dad, los cuales debían pagarse solidariamente. En cuanto a los daños y angustias mentales reclamados, se adjudicaron $500 más costas y $500 de honorarios de abogado.
En cuanto a los daños al apartamento 9-D, el tribunal condenó a las codeman-dadas a pagar $5,300 solidariamente a la Sociedad Legal de Bienes Gananciales compuesta por la señora Ibáñez de Vázquez y el señor Vázquez Riquelme. Por los daños emocionales y angustias mentales de la señora Ibáñez de Vázquez, el tribunal condenó a las codemandadas al pago solidario de $2,000 más sus costas, así como $500 por honorarios de abogado. La demanda del señor Vázquez Riquelme fue des-estimada por incomparecencia.

 En la Sentencia del Tribunal de Apelaciones se menciona el inciso (g) del Art. 10 de la Ley de Condominios de 2003. Entendemos que se refiere a un error en el número del artículo.

 El Art. 15(f) de la Ley Núm. 157 de 4 de junio de 1976 disponía:
*402 “Art. 15. Reglas que gobiernan el uso de apartamientos; infracción dará lugar a acción de daños
“El uso y disfrute de cada apartamiento estará sometido a las reglas siguientes:
“(f) Todo titular observará la diligencia debida en el uso del inmueble, y en sus relaciones con los demás titulares, y responderá ante éstos por las violaciones come-tidas por sus familiares, visitas o empleados, y en general por las personas que ocupen su apartamiento por cualquier título, sin perjuicio de las acciones directas que procedan contra dichas personas.
“La infracción de estas reglas dará lugar al ejercicio de la acción de daños y peijuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corresponda en derecho.” 1976 Leyes de Puerto Rico 489-490.

 Dispone:
“[Art. 1098.] Pago por uno de los deudores solidarios[J
“El pago hecho por uno de los deudores solidarios extingue la obligación.
“El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo.
“La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda decada uno.” 31 L.P.R.A. see. 3109.

 El Art. 1810 dispone:

“Cosas arrojadas o caídas de las casas

“El cabeza de familia que habita una casa o parte de ella es responsable de los daños causados por las cosas que se arrojaren o cayeren de la misma.”

 Tras las enmiendas posteriores, ésta es ahora el inciso (g) del Art. 15.

 El Art. 15 de la Ley Núm. 104 de 25 de junio de 1958 disponía lo siguiente:
“El uso y disfrute de cada apartamiento estará sometido a las reglas si-guientes:
“(a) Cada apartamiento se dedicara únicamente al uso dispuesto para el mismo en la escritura a que se refiere el artículo 2.
*420 “(b) Ningún ocupante del apartamiento producirá ruidos o molestias, ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos.
“(c) Los apartamientos no se usarán para fines contrarios a la ley, la moral y a las buenas costumbres.
“(d) Cada titular deberá ejecutar a sus únicas expensas las obras de modi-ficación, reparación, limpieza, seguridad y mejoras de su apartamiento, sin pertur-bar el uso y goce legítimo de los demás, ni cambiar la forma externa de las fachadas, ni decorar las paredes, puertas o ventanas exteriores con colores o tonalidades dis-tintas a las del conjunto.
“(e) Todo titular u ocupante cumplirá estrictamente con las disposiciones de administración que se consignen en la escritura o el Reglamento a que se refiere el Artículo 36.
“La infracción de estas reglas dará lugar al ejercicio de la acción de daños y peijuicios por aquel titular u ocupante que resulte afectado.” (Enfasis suplido.) 1958 Leyes de Puerto Rico 261-262.

 El inciso (g) del Art. 15 de la Ley Núm. 157 de 4 de junio de 1976 es ahora el inciso (i).